123 N.J. Super. 364 (1973)
303 A.2d 97
CONTINENTAL CAN COMPANY, A CORPORATION, HORN HARDART COMPANY, A CORPORATION, NEW YORK SUSQUEHANNA AND WESTERN RAILROAD COMPANY, PLAINTIFFS,
v.
HUDSON FOAM LATEX PRODUCTS, INC., DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 23, 1973.
*365 Messrs. Feuerstein, Sachs & Maitlin, attorneys for plaintiffs.
Messrs. Vaccaro and Osborne, attorneys for defendant.
BRESLIN, J.C.C., Temporarily Assigned.
This is a motion for summary judgment by three corporate plaintiffs (Continental Can Company, Horn Hardart Company and New York Susquehanna and Western Railroad Company) in a negligence action against defendant Hudson Foam Latex Products, Inc. (hereinafter Hudson). The action grows out of a fire that occurred in a warehouse located at 309 River Road, Edgewater, New Jersey, on or about February 22, 1966. At that time Hudson was a tenant on the second floor of the warehouse and plaintiffs had stored goods belonging to them on the first floor. The fire started in one of the baling machines used by defendant in its business, allegedly as a result of negligent maintenance by defendant. Plaintiffs' goods were damaged when large quantities *366 of water used to extinguish the fire flowed from the second floor to the first floor. The water flowed from two sources, a sprinkler system in the building, automatically activated after the fire had started, and the fire-fighting equipment used by the firemen who responded to the alarm. Plaintiffs further allege that defendant negligently failed to take precautionary measures to see that any fire would be extinguished immediately without the need for the application of excessive quantities of water.
The fire in question was the subject of a prior suit captioned "Novamont Corporation and/or Chemore Corporation v. Hudson Foam Latex Corporation and Summit Warehouse Corporation," Docket No. L-28180-68. Plaintiff therein had stored its goods on the first floor of the warehouse and, as do plaintiffs in the instant suit, complained of damage to its goods caused by the flow of water. Plaintiff therein (unrelated to plaintiffs in the instant case) brought an action against Hudson and against Summit Warehouse Corporation. The latter was bailee of Novamont's goods, so that Novamont included in its complaint a count for breach of the bailment contract, as well as a negligence count against both defendants. A five-day trial on liability in April 1971 resulted in a jury verdict in favor of plaintiff and against Hudson only. In the present suit plaintiffs contend that the prior judgment conclusively established the negligence of Hudson and the causal connection between such negligence and the water damage to the goods on the first floor of the warehouse. Therefore, plaintiffs argue, the instant matter should summarily be determined in their favor on the issue of liability.
The resolution of the issue presented is complicated by the fact that at the prior trial, due to the alleged unavailability of the only two individuals who could testify for the defense, defendant (represented by the same attorneys who are handling the defense of the instant case) called no witnesses and the matter went to the jury in that posture. The two individuals referred to are Oscar Shuffman and *367 his brother Fred, the principals of Hudson. According to representations made by Oscar, Fred had been incapacitated by an illness from September 1969 through the time of trial. Oscar was unavailable at the time of trial allegedly because he had been injured in an automobile accident a short time before the day on which the trial began; a doctor's affidavit was submitted to corroborate the fact that he had injuries and that attendance at trial might prove detrimental to his health. Based on the unavailability of the Shuffman brothers, defendant made application for an adjournment before trial, for an adjournment and/or a mistrial during trial, and for a new trial after the verdict. All applications were denied and defendant applied to the Appellate Division for leave to appeal, which was denied. The matter was subsequently settled between the parties.
Plaintiffs contend that their motion in the instant case should be granted "either on the basis of res judicata or the doctrine of collateral estoppel." It is probably more accurate to characterize the effect, if any, that the prior judgment would have on this case as one based upon the doctrine of collateral estoppel rather than res judicata. The latter doctrine involves the effect of a final judgment as between the parties to an original action and those in privity with such parties; the doctrine would normally be invoked in a subsequent action based upon the same claim or demand. See Mazilli v. Accident, etc., Casualty Ins. Co., 26 N.J. 307 (1958), citing Paterson v. Baker, 51 N.J. Eq. 49 (Ch. 1893). Collateral estoppel, on the other hand, is the doctrine which renders conclusive in a subsequent action on a different claim the determination of issues actually litigated in a prior action. However, it may or may not be allowable for a non-party to the prior action to assert in a subsequent action collateral estoppel against one who was a party (or is in privity with one who was a party) to the prior action, depending upon the view taken as to whether or not "mutuality of estoppel" is required. Mutuality of estoppel, if applicable, requires that a court not hold a judgment as *368 conclusive in favor of a person unless it would be equally conclusive against him. Miller v. Stieglitz, 113 N.J.L. 40 (E. & A. 1934).
In the instant case three non-parties to the prior action are attempting to assert collateral estoppel against one (Hudson) who was a party to said prior action. The doctrine seems prima facie to be applicable to this case, at least if one accepts the reasoning of Justice (now Chief Justice) Traynor in Bernhard v. Bank of America Nat. Trust & Sav. Ass'n, 19 Cal.2d 807, 122 P.2d 892 (Sup. Ct. 1942), wherein the prerequisites for the application of collateral estoppel were set forth as follows: (1) an identity of issues, (2) a final judgment on the merits, and (3) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the prior action. Although the cause of action in this case is different from the one prosecuted in the prior action, the primary issue appears to be identical: whether Hudson was guilty of negligent conduct which proximately caused damage to goods stored on the first floor of the warehouse. The other two prerequisites are obviously present in this case.
The Bernhard doctrine has been criticized as overbroad insofar as it would allow a plaintiff, who had not been a party to the prior action, to assert the estoppel in a subsequent action against a defendant who had unsuccessfully defended in the prior action. The result would be that in cases involving multiple claims emanating from a single occurrence, such as the crash of a commercial airliner, individual prospective plaintiffs could sit idly by while other plaintiffs attempt to establish the negligence of the defendant; as soon as one plaintiff is successful, the other plaintiffs could immediately come forward and assert collateral estoppel in lieu of having to prove their case. Prior judgments in favor of the defendant could, of course, not be asserted against the new plaintiffs since such a procedure would offend due process. Postal Tel. Cable Co. v. City of Newport, 247 U.S. 464, 38 S.Ct. 566, 62 L.Ed. 1215 *369 (1918). This is the point at which proponents of mutuality jump to their feet and object; they contend that if mutuality is not required in such cases, a defendant is put in the position of having to conduct its defense with maximum vigor against each plaintiff, no matter how small the amount of the claim, whereas plaintiffs who have not yet litigated can sit on the sidelines, awaiting one judgment that is adverse to the defendant. The situation is aggravated if, in fact, the awaited adverse judgment has been preceded by judgments favorable to the defendant.
It has been suggested that while mutuality should not generally be required, a non-party to the prior action should not be allowed to affirmatively assert collateral estoppel against a defendant if the latter did not have full, fair and effective opportunity to contest the issue or if assertion of the estoppel would result in "intolerable anomalies in the administration of justice" (such as where the defendant is successful against the first plaintiff, unsuccessful against a second, and a third attempt, to assert the unsuccessful judgment). See Currie, "Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine," 9 Stan. L. Rev. 281 (1957).
The state of the law in New Jersey is by no means clear with respect to whether mutuality is required in a situation where a party attempts to assert collateral estoppel. There is language in some earlier decisions which seem to imply that mutuality is required. See, e.g., Miller v. Stieglitz, supra, and Sbarbero v. Miller, 72 N.J. Eq. 248 (Ch. 1907), aff'd 74 N.J. Eq. 453 (E. & A. 1908). More recently, however, there have been decisions which seem to indicate that the determination as to whether to apply the mutuality requirement should depend upon the circumstances of the particular case.
In Reardon v. Allen, 88 N.J. Super. 560 (Law Div. 1965), a collision between two automobiles had resulted in a suit by Reardon's subrogated insurance carrier against Allen for property damage to Reardon's automobile; Reardon, *370 as a nominal party in that suit, had recovered a judgment. In the subsequent action Reardon's wife and daughter sued Allen for personal injuries and Reardon made a per quod claim against Allen. The Reardons moved for summary judgment, asserting affirmatively the prior judgment against Allen. In denying the motion the court ably set forth numerous policy reasons supporting the mutuality requirement. Mutuality was not present in that case since the Reardons would not have been precluded by an adverse judgment in the prior suit: Reardon, as a mere nominal party, having been in no position to exert any control upon the conduct of said prior action.
In Reilly v. Dziamba, 90 N.J. Super. 325 (App. Div. 1966), a collision between an automobile owned by Warren and driven by his wife and one owned and driven by Dziamba had resulted in cross-actions for property damage in which the latter had prevailed. In the subsequent action, a passenger (Reilly) in the Warren vehicle sued the Warrens and Dziamba for personal injuries; after a judgment in favor of the passenger and against all three defendants, Dziamba moved for summary judgment granting him indemnity against the Warrens, based on the judgment in the first suit. The Appellate Division held that the prior judgment had no such effect, relying in part on the fact that the prior litigation had been conducted by the collision carriers for the respective parties and citing Reardon v. Allen, supra. In dictum the court said that the passenger could not have invoked the prior judgment to fix liability for the personal injuries upon the Warrens.
Desmond v. Kramer, 96 N.J. Super. 96 (Cty. Ct. 1967), involved a collision between a truck and a bus. A prior action by 14 bus passengers had resulted in a judgment in their favor and against all defendants. In the subsequent action, a bus passenger who had not been a party to the prior action brought suit against the same defendants and moved for summary judgment based upon the determination *371 in the prior action. The court held that mutuality should not be required under the facts presented:
* * * It would be absurd for the law solemnly to adjudge that defendant Somerset was negligent as to 14 of its passengers but not as to the 15th passenger injured in the same accident.
The court added, however:
There are undoubtedly instances in which a party should not be estopped by a prior judgment from relitigating the same issue with a different adversary. [at 107]
In Miraglia v. Miraglia, 106 N.J. Super. 266 (App. Div. 1969), a prior suit had involved cross-actions for personal injuries by the drivers of the two automobiles involved in a collision; the jury had returned a verdict of no cause for action as to both claims. In the subsequent action, two passengers in one of the vehicles brought suit against both drivers for personal injuries. The jury returned a special verdict that only one of the drivers had been negligent. Prior to the verdict, the driver who eventually was found negligent had made a motion for summary judgment on a claim for contribution against the other driver; the basis of the motion was the judgment in the prior action. The Appellate Division, reversing the trial court, held that the prior judgment, as between the two driver-defendants, had conclusively established that both had been negligent. (The dissenting judge theorized that the prior verdict of no cause could have been based on a finding that neither driver had proven the other negligent.) The court declined to express an opinion as to whether in the subsequent action the passenger-plaintiffs could have invoked the prior judgment to summarily establish the liability of both driver-defendants. Citing and distinguishing Reardon v. Allen and Reilly v. Dziamba, supra, the court indicated (at 275) that "These cases illustrate the principle that the doctrine of collateral estoppel is not of automatic *372 application, but must depend upon certain circumstances."
The above-cited cases do no more than indicate that at present no general rule can be stated that will resolve in all cases the question of whether or not collateral estoppel should be applied. It appears that although mutuality may have a bearing on a given case, it is not an absolute prerequisite. Factually, Desmond v. Kramer, supra, more closely resembles the instant case than do the other decisions cited. Plaintiffs strongly rely on that case in support of their motion. However, the instant case involves an element which distinguishes it from that case and compels a conclusion that plaintiffs may not assert collateral estoppel as to the prior judgment.
In the prior action defendant Hudson was denied the opportunity to fully litigate the issue of its negligence (or freedom therefrom). Hudson was unable to present any testimony as to the measures taken by it to guard against fire and resultant damage to goods on the premises. The jury may well have drawn an adverse inference from the failure of Hudson to offer the testimony of any witnesses in support of the thesis that it had acted with reasonable care. This is not to say that it was error for the judge in the prior litigation to deny Hudson an adjournment pending the incapacity of the two prospective witnesses. There may well have been ample justification for the denial. However, the resulting procedural advantage that inured to the plaintiff in the prior suit should not automatically be afforded to these three new plaintiffs. Furthermore, Hudson took an appeal to test the validity of the denial, but the case was settled while the appeal was pending. Since the clear policy of the law is to encourage settlements, it would be most inappropriate if Hudson were to be penalized for not prosecuting the appeal by the application of collateral estoppel to the instant suit.
In Zdanok v. Glidden Co., 327 F.2d 944 (1964), the Court of Appeals for the Second Circuit allowed the affirmative *373 assertion of collateral estoppel by a new plaintiff against a defendant who had been unsuccessful in a prior action. The requirement of mutuality was therefore rejected, but the court held that the party against whom the estoppel is asserted must have had reason and opportunity to litigate the first action strenuously and fully. Said requirement was added to the three set forth in Bernhard v. Bank of America Nat. Trust & Sav. Ass'n, supra. The same court appeared to go even further in Berner v. British Commonwealth Pacific Airlines, Ltd., 346 F. 2d 532 (2 Cir.1965), by implying that the mutuality requirement should not be dispensed with unless the party against whom collateral estoppel is asserted had opportunity and motive to fully litigate both at trial and, in appropriate circumstances, on appeal. Embodied in the opinion is a notion that a party should not be affected so drastically by a prior litigation unless it was foreseeable that the ultimate outcome of said litigation, if adverse, could later be used by others on a collateral estoppel basis.
In the instant case there is no doubt that Hudson did not fully litigate the matter in the prior action due to the trial judge's denial of an adjournment, a circumstance beyond Hudson's control. The appeal was abandoned in favor of a settlement presumably deemed favorable by the parties concerned. It is difficult to imagine that Hudson contemplated the instant situation in deciding to forego the appeal; nor should such lack of foresight be considered unreasonable in view of the uncertain state of the law.
Desmond v. Kramer, supra, is to be contrasted in that defendants there had more than ample opportunity to litigate in the prior action, which encompassed an 11-day trial, an appeal, a retrial which covered ten days, and a second appeal. The court conceded: "Perhaps when a prior case has not afforded the defendant full opportunity and motivation for a strong defense, its effect should not be extended to other cases arising out of the same facts and involving the same issues." 96 N.J. Super. at 105.
*374 Furthermore, in Desmond v. Kramer a single plaintiff took the benefit of the efforts of the 14 plaintiffs who had previously been successful. In the instant case three plaintiffs attempt to avoid the burden of proving negligence by relying on the success of the single plaintiff in the prior litigation. Somehow it seems less objectionable to allow the one to ride the coattails of the many than the many the coattails of the one. Certainly, one cannot assume that the result in Desmond would have been the same had the lone plaintiff prevailed in the prior suit and had the other 14 plaintiffs then come forward to assert collateral estoppel.
An excellent summation of the current status of the law appears in Judge Davis' opinion in Technograph Printed Circuits, Ltd. v. United States, 372 F.2d 969, 178 Ct. Cl. 543 (Ct. Claims 1967), cited in Desmond v. Kramer, supra, at 107:
From the course of decisions since Bernhard [supra] in 1942 it is clear to us that the courts have been moving cautiously, attending closely to the circumstances and needs of the particular case and type of litigation, rather than applying sweeping generalizations or the broad principle that "one day in court" is always enough. If appraisal of the factors pertinent to the concrete case plainly teaches that the prior judgment should be conclusive, mutuality may well be held unnecessary; but if that road is not the one clearly marked, relitigation will still be allowed. [at 976]
At present, therefore, doubts should be resolved in favor of relitigation. It is clear that, at best, plaintiffs' assertion of collateral estoppel is of doubtful merit; relitigation is appropriate.
For the foregoing reasons, plaintiffs' motion for summary judgment is denied.