[No. A112101. First Dist., Div. Two. Aug. 3, 2007.]

KATHLEEN M. SMITH et al., Plaintiffs and Respondents, v.
EXXONMOBIL OIL CORPORATION, Defendant and Appellant.

## COUNSEL

Horvitz & Levy, David M. Axelrad, Stephen E. Norris, Curt Charles Cutting; Armstrong & Associates, William Henry Armstrong, Miriam E. Hiser and Jennifer D. Fitzpatrick for Defendant and Appellant.

Paul, Hanley & Harley, Philip A. Harley, Wesley Wayne Wagnon; Law Offices of Bryce C. Anderson and Bryce Clay Anderson for Plaintiffs and Respondents.

## OPINION

**KLINE, P. J.**—This appeal is from a judgment of wrongful death in which liability was established by application of the doctrine of collateral estoppel. Relying on findings of liability in an earlier personal injury action against it, the trial court precluded defendant and appellant ExxonMobil Oil Corporation (Mobil)[1] from presenting any defense to respondents' claims of exposure to asbestos, negligence, causation, and allocation of fault. The case went to the jury solely on the issue of damages.

Appellant claims collateral estoppel was erroneously applied because (1) through no fault of its own, it was unable to present a full defense in the earlier action, and (2) intervening decisions of the California Supreme Court changed the controlling legal standards and the new standards were not considered in the prior proceeding.

---

[1] Prior to 1999, ExxonMobil Oil Corporation was known as Mobil Oil Corporation. Our use of the name Mobil in this opinion refers to both ExxonMobil Oil Corporation and Mobil Oil Corporation.

## FACTS[2] AND PROCEEDINGS BELOW

Respondents' decedent, George R. Smith, a plumber and pipefitter, was exposed to asbestos at numerous jobsites from 1948 to 1982. For about six months in 1966 and 1967, Smith worked at Mobil's refinery in Torrance as an employee of Procon, an independent contractor hired by Mobil to construct an addition to the refinery immediately adjacent to the existing refinery complex. During the construction, Procon's employees, including Smith, removed asbestos insulation from existing structures in order to gain access to underlying pipes and Procon took no precautions to protect its employees from ingesting the dust that pervaded the area. At the same time, Mobil's own employees were working on adjacent premises and they too were removing asbestos insulation from pipes, resulting in additional asbestos dust. Mobil failed to take precautions to prevent Smith and other Procon employees working nearby from being exposed to the asbestos dust generated by Mobil's employees. In September 2000, after he learned he had lung cancer, Smith commenced a personal injury action against numerous parties, including Mobil, whose conduct allegedly contributed to his asbestos-related illness. His wife, Hannah Smith, also sued for loss of consortium.

In preparing for trial, Mobil retained Francis Weir, Ph.D., an industrial hygienist and toxicologist, to provide expert testimony regarding the significance of Smith's exposure to asbestos. Dr. Weir was prepared to testify that in his opinion Smith's exposure to asbestos at Mobil's Torrance refinery was insignificant, and his only significant exposure occurred early in his career during work with asbestos-containing transite pipe, which was different from and more dangerous than any work he engaged in at an oil refinery. Weir was also prepared to state that, based on knowledge available at the time, none of the refinery exposures claimed by Smith would have raised reasonable concerns about health hazards, and Mobil's conduct was well within what were then considered reasonable industrial hygiene practices.

A few days before he was scheduled to testify, near the close of Mobil's case, Dr. Weir informed Mobil he was unable to testify because his daughter had been killed in an automobile accident. Because Weir was the only expert it had on the issues just described, Mobil and its attorneys immediately commenced a search for another industrial hygienist or toxicologist to replace Weir; however none of those they were able to contact were able to testify on

---

[2] The facts we describe are drawn from our prior opinion affirming the judgment in the earlier personal injury action, *Smith v. Mobil Oil Corp.* (Feb. 21, 2003, A096323) (nonpub. opn.).

such short notice. Because the presentation of evidence was by then nearly completed, and Smith was seriously ill and apparently near death, so that trial could not be significantly delayed beyond the few days that had been allowed by the court, Mobil decided it had no alternative but to proceed without the testimony expected of Weir.

By the end of trial all of the defendants except Mobil had either settled or been dismissed, so the case was submitted to the jury only with regard to the Smiths' claims against Mobil. In a special verdict, the jury attributed 12.5 percent of Smith's injuries to Mobil's negligence, awarded George Smith economic damages in the amount of $319,500 and noneconomic damages in the amount of $2.5 million. Hannah Smith was awarded $1.5 million for loss of consortium. The trial court entered judgment accordingly, in the total amount of $819,500 plus costs, subject to settlement credits to be determined by the court. The jury found Mobil liable on the basis of two theories of negligence: (1) Mobil's failure to warn Smith of a preexisting dangerous condition on the premises, and (2) the failure of Mobil's employees to exercise ordinary care in the performance of their work.[3] Mobil appealed and, in an unpublished opinion that issued on February 21, 2003, we affirmed the judgment. Mobil's inability to obtain Weir's expert testimony or that of a replacement witness was not an issue in that appeal.

During the pendency of the prior appeal, Smith died. The present wrongful death action against Mobil and others was commenced by respondents (Smith's widow and six children) on September 9, 2002. Hannah died in late 2003, and George and Hannah's daughter was substituted as the successor in interest to her deceased father. In June 2005, respondents moved in limine for application of collateral estoppel as to Mobil with respect to four issues: (1) whether Smith's lung cancer was caused by exposure to asbestos; (2) whether Mobil was negligent by failing to warn Smith of a preexisting dangerous condition on its premises; (3) whether Mobil was negligent because its employees failed to exercise ordinary care in the performance of their work; and (4) whether Mobil was a cause of Smith's injury. Mobil should be precluded from litigating these issues in the wrongful death action, plaintiffs maintained, because they had all been litigated and adjudicated adversely to Mobil in the personal injury action.

Mobil opposed the motion, arguing, among other things, that it would be unfair to apply collateral estoppel because Dr. Weir's sudden inability to testify at the personal injury trial, for which Mobil was not responsible, prevented it from mounting a complete defense to the liability claim. Collateral estoppel was also unjustified, Mobil argued, because of changes in

---

[3] Plaintiffs also advanced a theory of negligent hiring of Procon, Smith's employer, but the jury rejected that theory.

controlling legal principles. After the trial and appeal in the personal injury action, the California Supreme Court issued its opinion in *Viner v. Sweet* (2003) 30 Cal.4th 1232 [135 Cal.Rptr.2d 629, 70 P.3d 1046], requiring an instruction on causation Mobil claimed to be significantly different from that given in the personal injury action. Mobil also called the trial court's attention to the fact that the Supreme Court then had before it a case (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659 [36 Cal.Rptr.3d 495, 123 P.3d 931]) presenting the question whether a hirer like Mobil should be liable in a negligence action for injuries resulting from an allegedly concealed dangerous condition on its premises absent proof of fraudulent concealment. According to Mobil, current law on that issue—assertedly reflected in *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253, 269–270, footnote 4 [74 Cal.Rptr.2d 878, 955 P.2d 504]—required a showing of fraudulent concealment, and the issue was likely to be clarified by the Supreme Court in *Kinsman.* The application of collateral estoppel, Mobil argued, would unfairly impair its ability to enjoy the benefit of the anticipated "clarification."

The trial court was not persuaded by Mobil's arguments. At the hearing on the motion, the court ruled from the bench that "the motion to apply issue preclusion is granted. [¶] I think we are in a damages only phase."

On July 11, 2005, the jury returned a special verdict finding damages for loss of George Smith's love, companionship, comfort, care, assistance, protection, affection, society, moral support, training and guidance, in the amount of $1,250,000. The judgment on special verdict, filed on August 23, 2005, recites: "It appearing by order of the court dated July 5, 2005 that the judgment in [the earlier personal injury action], providing that [Mobil] bears a 12.5 % share of liability for injuries suffered by plaintiffs' decedent, acts as collateral estoppel and res-judicata in the above-captioned action, and pre-cludes [Mobil] from contesting the fact or proportional share of its liability in this action, plaintiffs are entitled to judgment against defendant [Mobil] for total non-economic damages in the amount of $156,250.00 plus recoverable costs."

Mobil filed a timely appeal.

## DISCUSSION

### I.

■ "Collateral estoppel is one of two aspects of the doctrine of res judicata. In its narrowest form, res judicata ' "precludes parties or their privies from relitigating a *cause of action* [finally resolved in a prior

proceeding]." ' [Citation.] But res judicata also includes a broader principle, commonly termed collateral estoppel, under which an *issue* ' "necessarily decided in [prior] litigation [may be] conclusively determined *as [against] the parties [thereto] or their privies . . .* in a subsequent lawsuit on a *different* cause of action." ' [Citation.] [¶] Thus, res judicata does not merely bar relitigation of identical claims or causes of action. Instead, in its collateral estoppel aspect, the doctrine may also preclude a party to prior litigation from redisputing *issues* therein decided against him, even when those issues bear on different claims raised in a later case. Moreover, because the estoppel need not be mutual, it is not necessary that the earlier and later proceedings involve the identical parties or their privies. Only the party *against whom* the doctrine is invoked must be bound by the prior proceeding. [Citations.]" (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 [88 Cal.Rptr.2d 366, 982 P.2d 229].) Like res judicata, collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." (*Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322, 326 [58 L.Ed.2d 552, 99 S.Ct. 645] (*Parklane*).)

■ "Collateral estoppel applies when (1) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication, (2) there was a final judgment on the merits in the prior action and (3) the issue necessarily decided in the prior adjudication is identical to the one that is sought to be relitigated." (*Roos v. Red* (2005) 130 Cal.App.4th 870, 879 [30 Cal.Rptr.3d 446], citing *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1201 [108 Cal.Rptr.2d 471, 25 P.3d 670].) Conceding that all three factors are present in this case, Mobil emphasizes the equitable nature of collateral estoppel and that even where the technical requirements are all met, the doctrine is to be applied "*only* where such application comports with fairness and sound public policy." (*Vandenberg v. Superior Court, supra*, 21 Cal.4th at p. 835; see *White Motor Corp. v. Teresinski* (1989) 214 Cal.App.3d 754, 763 [263 Cal.Rptr. 26]; *Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 941 [190 Cal.Rptr. 29].)

■ Mobil also stresses that the offensive use of collateral estoppel "is more closely scrutinized than the defensive use of the doctrine." (*White Motor Corp. v. Teresinski, supra*, 214 Cal.App.3d at p. 763; see *Parklane, supra*, 439 U.S. at pp. 329–331.) Collateral estoppel is used offensively when, as here, "the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." (*Parklane*, at p. 326, fn. 4; see also Vestal, *Preclusion/Res Judicata Variables: Parties* (1964–1965) 50 Iowa L.Rev. 27, 43–76.) Although some cases suggest that a trial court's decision to allow the

offensive use of collateral estoppel is an exercise of discretion to which an appellate court should give deference (see, e.g., *Sandoval v. Superior Court, supra,* 140 Cal.App.3d at p. 942), the "predominate view" in this state is that "the trial court's application of collateral estoppel is reviewed de novo." (*Roos v. Red, supra,* 130 Cal.App.4th at p. 878, citing *Groves v. Peterson* (2002) 100 Cal.App.4th 659, 667 [123 Cal.Rptr.2d 164] & *Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1333, fn. 2 [93 Cal.Rptr.2d 635].)

Respondents take the position that de novo review is appropriate with respect to the presence of the three elements essential to collateral estoppel (i.e., whether the necessary parties are the same or in privity, there was previously a final judgment on the merits, and the issues are identical) and to whether the prior proceeding was of a type that should be given preclusive effect (see, e.g., *Vandenberg v. Superior Court, supra,* 21 Cal.4th at pp. 831–834 [private arbitration not given preclusive effect]). They claim de novo review does not, however, apply to a trial court's determination of the "fairness" of applying collateral estoppel, as to which respondents say the more deferential abuse of discretion standard should apply. Respondents cite no authority for this proposition, and in the circumstances of this case we decline to accept it. While reasonable minds may differ as to the appropriateness of de novo review of a trial court determination of the applicability of an equitable doctrine that is made upon the basis of a factual inquiry and credibility assessment, the facts bearing upon the propriety of applying estoppel in this case, none of which involve questions of credibility, did not arise out of an independent evidentiary inquiry and are entirely uncontested. The trial court had no more information than is now before us and was in no better position than we are to evaluate that information.

■ As indicated, Mobil contends that application of collateral estoppel in this case is unfair and bad policy, first, because of its inability at the prior adjudication to obtain expert testimony crucial to its defense on the issue of liability and, second, due to intervening changes in controlling law. Our agreement with the first claim renders it unnecessary to address the second.[4]

## II.

■ Equitable justice is better than the legal kind, it has been said, because by looking to the circumstances of the matter under adjudication it

---

[4] However, we do feel it appropriate to note that *Kinsman v. Unocal Corp., supra,* 37 Cal.4th 659, which according to Mobil bars a finding of negligence in a case such as this in the absence of a finding that the dangerous condition was fraudulently concealed, was not decided until *after* judgment was entered in the second action and therefore does not represent an "intervening" change in controlling law. In effect, Mobil argues that the trial court should have denied respondents' motion to apply collateral based on *its* prediction of how the Supreme Court would decide *Kinsman,* an unprecedented and wholly untenable contention.

can cure the error that may result from the universal application of a legal generality. (Aristotle, Nichomachean Ethics, book V, ch. 4, pp. 120–121 (Ostwald translation, 1962); 1 Jones's Blackstone Commentaries (1915) p. 103 [equity is " 'the correction of that, wherein the law (by reason of its universality) is deficient' "]; *Beley v. Naphtaly* (1898) 169 U.S. 353, 360 [42 L.Ed. 775, 18 S.Ct. 354].) Unlike law, equity cannot afford and does not need to express itself in precise rules; it speaks instead through ill-defined "principles," "doctrines" and "maxims." (See, e.g., the maxims codified in Civ. Code, §§ 3509–3548.) For this reason, and because equity defines itself only through its application to peculiar circumstances so infinitely variable as frequently to defy classification,[5] there is some discomfort in the law with the resort to purely equitable solutions. (See, e.g., Pound, *The Decadence of Equity* (1905) 5 Colum. L.Rev. 20.) ■ For example, with respect to the issue this case presents, we know that collateral estoppel does not apply "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue." (*Kremer v. Chemical Construction Corp.* (1982) 456 U.S. 461, 480–481 [72 L.Ed.2d 262, 102 S.Ct. 1883].) The problem is that parties against whom a verdict is returned commonly feel they were denied a "full and fair opportunity" to litigate their claims and, because no trial is perfect, it is usually not difficult for them to find a defect upon which to try to hang their hats. It is easy to say that the "full and fair opportunity" necessary to collateral estoppel is not that which is perfect, but not so easy to distinguish imperfect proceedings which are nonetheless acceptable from those which are not.

No case brought to our attention by the parties or that we can find has addressed the question whether the inability of a defendant at a prior trial to obtain the testimony of an assertedly crucial witness so unfairly denied him a full opportunity to litigate his claim that he should not be collaterally estopped from relitigating the matter.[6] The case law is not, however, altogether unhelpful. The United States Supreme Court discussed the factors that may have prevented a defendant from enjoying a full and fair opportunity to litigate a claim at a prior trial in *Parklane, supra,* 439 U.S. 322 and *Blonder-Tongue v. University Foundation* (1971) 402 U.S. 313 [28 L.Ed.2d 788, 91 S.Ct. 1434] (*Blonder-Tongue*). In *Parklane,* the court posited the

---

[5] For example, it has been stated that "[i]n the final analysis . . . an equitable estoppel rests upon the facts and circumstances of the particular case in which it is urged, considered in the framework of the elements, requisites, and grounds of equitable estoppel, and consequently, any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances. The cases themselves must be looked to and applied by way of analogy rather than rule." (28 Am.Jur.2d, Estoppel & Waiver, § 28, pp. 455–456, fns. omitted.)

[6] But see *Continental Can Co. v. Hudson Foam* (1973) 123 N.J. Super. 364 [303 A.2d 97], reversed (1974) 129 N.J. Super. 426 [324 A.2d 60] (*Continental Can*) discussed, *post,* at page 1420, footnote 8.

situation in which the second action afforded the defendant procedural opportunities unavailable in the first action that could readily cause a different result, as where "the defendant in the first action was forced to defend in an inconvenient forum and therefore was *unable to engage in full scale discovery or call witnesses.*" (*Parklane*, at p. 331, fn. 15, italics added.) *Blonder-Tongue* was a patent infringement case and the court acknowledged that the unusual factual complexity of such litigation rendered it inordinately difficult to determine whether a patentee had had a full and fair chance to litigate the validity of his patent in the earlier case. Included among the important factors that needed to be considered, the court said, is "whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation." (*Blonder-Tongue*, at p. 333.) *Parklane* and *Blonder-Tongue,* thus, both acknowledge that the unavailability of a crucial witness or evidence at the prior proceeding is a circumstance that may render it inappropriate to permit the offensive use of collateral estoppel.

■ The deprivation of crucial evidence or witnesses at the earlier trial is also among the considerations mentioned in the Restatement Second of Judgments as militating against preclusion. Section 29 of the Restatement states the familiar principle that a party is not precluded from relitigating an issue "unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or *other circumstances* justify affording him an opportunity to relitigate the issue." (Rest.2d Judgments (1982) § 29, italics added.) Comment j to section 29 states that "[i]mportant among such other circumstances is the disclosure that the prior determination was plainly wrong or that new evidence has become available that could likely lead to a different result. It is unnecessary that the party seeking to avoid preclusion show, as he must in seeking to set aside a judgment, that the evidence could not have been discovered with due diligence; the question is not whether a prior determination should be set aside but whether it should be treated as conclusive for further purposes." (Rest.2d Judgments, § 29, com. j, p. 297.) The illustration the Restatement provides of "other circumstances" that justify an opportunity to relitigate an issue is this: "C engages in conduct resulting in damage to the property of A and B that is stored in the same location. In A's action against C for damages, a key witness for C on the issue of C's negligence is unavailable. Judgment is for A. In B's subsequent action for his damage, C may be permitted to relitigate the issue of negligence upon a showing that the witness can be available at trial of the action." (Rest.2d Judgments, § 29, com. j, illus. 9, p. 298.)

Respondents are unimpressed with the foregoing authority. They point out that collateral estoppel was deemed appropriate in *Parklane, Blonder-Tongue*

and the other cases Mobil relies upon, and the issue in the other cases was not the inability of the defendant to present crucial evidence or witnesses at the earlier trial, but the fact that the prior proceeding was of a different nature than the subsequent trial. (*Kremer v. Chemical Construction Corp., supra*, 456 U.S. 461 [ruling in prior administrative proceeding entitled to preclusive effect in subsequent· civil rights proceeding]; *Roos v. Red, supra*, 130 Cal.App.4th 870 [adjudication in prior bankruptcy proceeding given preclusive effect in subsequent wrongful death suit]; *Imen v. Glassford* (1988) 201 Cal.App.3d 898 [247 Cal.Rptr. 514] [ruling in prior administrative proceeding given preclusive effect in subsequent fraud action].) Finally, respondents claim, the provision of the Restatement Mobil relies upon is inconsistent with California law.

The fact that collateral estoppel was found applicable in *Parklane*, *Blonder-Tongue* and the three other cases just cited is beside the point. Mobil does not rely on those cases for anything more than the language contained in the opinions emphasizing the equitable nature of collateral estoppel, the bar on the offensive use of the doctrine when the defendant did not have a full and fair opportunity to litigate his claim or issue at the earlier proceeding and, in the case of *Parklane* and *Blonder-Tongue*, the indication that the inability without fault of a defendant to produce important evidence or witnesses at the prior trial is among the circumstances rendering issue preclusion inappropriate.

■ Respondents assert that the illustration employed in the Restatement Second of Judgments quoted above conflicts with *Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741 [238 Cal.Rptr. 259] (*Evans*), and therefore does not represent California law. *Evans* was a wrongful death action by the widow and children of a worker who died as a result of occupational exposure to asbestos products allegedly produced by the defendant. The trial court ruled that the plaintiffs were barred from proceeding with their action due to the adverse judgment in the worker's personal injury suit. Relying on *Melendres v. City of Los Angeles* (1974) 40 Cal.App.3d 718 [115 Cal.Rptr. 409], which held that collateral estoppel does not bar a later suit if new material facts emerged since the prior decision, the *Evans* plaintiffs contended on appeal that facts unobtainable at the time of the ·earlier trial were now available, rendering estoppel inapplicable. According to the plaintiffs, a lung biopsy performed after the death of the deceased that could not be performed while he was alive could now be used to show that asbestosis was the proximate cause of death, contrary to the jury finding at the prior trial. The Court of Appeal agreed with the plaintiffs that collateral estoppel " 'was never intended to operate so as to prevent a re-examination of the same question between the same parties where, in the interval between the first and

second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants . . .' [citation]" (*Evans, supra*, 194 Cal.App.3d at p. 748, quoting *Hurd v. Albert* (1931) 214 Cal. 15, 26 [3 P.2d 545]), but disagreed that that was the case in *Evans*. "Here, the additional test performed during the autopsy simply goes to the weight of the evidence against Celotex; i.e., this evidence did not establish a previously undiscovered theory of liability nor did it denote a change in the parties' legal rights. An exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence. Otherwise, there would be no end to litigation. Accordingly, we hold that the results from the lung biopsy do not operate to prevent the application of collateral estoppel." (*Evans*, at p. 748.)

Respondents say that "[j]ust as the heirs in *Evans* were collaterally estopped from relitigating the issues even though they had new evidence which would have been *impossible* to obtain in the prior litigation, [Mobil] is collaterally estopped from relitigating the issues even though its previously unavailable expert may now be available." Respondents mischaracterize *Evans*. Preclusion was equitable in that case because the posttrial biopsy appeared to be merely cumulative. As the appellate court stated, "[p]laintiffs have not indicated what this biopsy showed and how it differed, if at all, from the evidence adduced at the personal injury trial." (*Evans, supra*, 194 Cal.App.3d at p. 747.) Thus, to use the parlance of the Restatement, the *Evans* plaintiffs failed to show that the new evidence "could likely lead to a different result."[7]

The situation in the present case is very different. The relevant facts consist entirely of representations set forth in a declaration submitted by Mobil in opposition to respondents' in limine motion to apply collateral estoppel. The declarant, William H. Armstrong, a member of the law firm that represented Mobil in the prior and subsequent trials, states as follows: "We retained and disclosed Francis Weir, Ph.D., an industrial hygienist and toxicologist, to render opinion testimony about the relative significance of decedent's various exposures to asbestos. Dr. Weir was prepared to opine that decedent's exposures at the Torrance refinery . . . ranged from zero to insignificantly

---

[7] Our analysis assumes *Evans, supra*, 194 Cal.App.3d 741, was correctly decided; but that assumption is questionable. It is true that, as the *Evans* court said, "[a]n exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence" (*id.* at p. 748); however, a postmortem biopsy impossible to have obtained at the prior trial is ordinarily powerful evidence of whether death was caused by exposure to asbestos. The *Evans* opinion does not indicate what the biopsy revealed nor describe the quality of the evidence of causation available and presented by the plaintiffs at the earlier trial. The court's conclusion that estoppel was fairly applied can only be justified if the plaintiffs were previously able to obtain and presented evidence that death was caused by asbestos, and the biopsy did not provide substantially stronger evidence.

small, and that Mr. Smith's main asbestos exposures occurred from his work with asbestos-containing transite pipe early in his career (unrelated to any refinery work). He was also prepared to opine that none of the reported refinery exposures would have created any reason for concern about a health hazard based on knowledge available at the time, and that Mobil's conduct was well within a reasonable industrial hygiene approach. As reflected in the transcript of [the pretrial hearing on] May 14, 2001, Dr. Weir was unable to testify due to the unexpected sudden death of his only daughter on May 11, 2001 [while trial was in progress]. . . . [¶] We expected to use only one expert, i.e., Dr. Weir, to cover the points he was prepared to address. When Dr. Weir became unavailable, no other disclosed or retained expert was available to present that testimony. Although the trial court (Judge Wick) was prepared to allow a substitute, the evidence was ending, and Mr. Smith was dying, and no one was available on such short notice."

Respondents acknowledge that neither Mobil nor its counsel were in any way responsible for Dr. Weir's unavailability (cf. *Continental Can, supra,* 303 A.2d 97, revd. 129 N.J. Super. 426 [324 A.2d 60])[8] and that no other witness for Mobil at the prior trial addressed the issues about which Dr. Weir was expected to testify. It is additionally clear that those issues-causation, the applicable standard of care at the time, and apportionment of fault-were all crucial issues. Mobil's fortuitous inability, through no fault of its own, to produce evidence on these crucial issues makes it impossible to say that the prior trial provided it a full and fair opportunity to present a defense. In the unusual and compelling circumstances of this case, the trial court's application of collateral estoppel was unfair and must be set aside.

---

[8] One of the reasons the trial court in *Continental Can* refused to apply collateral estoppel was that "due to the alleged unavailability of the only two individuals who could testify for the defense, defendant . . . called no witnesses and the matter went to the jury in that posture." (*Continental Can, supra,* 303 A.2d at p. 98.) According to the trial court, one of the two witnesses assertedly "had been incapacitated by an illness from September 1969 through the time of trial," the other "was unavailable at the time of trial allegedly because he had been injured in an automobile accident a short time before the day on which the trial began [and] a doctor's affidavit was submitted to corroborate the fact that he had injuries and that attendance at trial might prove detrimental to his health." (*Ibid.*) The appellate court saw the facts quite differently.

Agreeing that Hudson, the defendant, did not fully litigate the matter in the prior action due to the trial court's denial of an adjournment, a circumstance beyond its control, the appellate division determined that one of the two unavailable defense witnesses was unimportant, and that in order to accommodate the alleged medical needs of the other witness the trial court granted 18 adjournments over a period of more than two years and Hudson had failed to document its need for a 19th adjournment. Rejecting the trial court's analysis, the appellate division specifically found "that rather than Hudson's being 'denied' the opportunity to litigate its negligence, it avoided the opportunity on every occasion it could including the last when the matter was tried. We are completely satisfied it had every fair opportunity to defend." (*Continental Can Co. v. Hudson Foam Latex Prod., supra,* 324 A.2d at p. 61.)

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. Appellant shall receive costs on appeal.

Lambden, J., and Richman, J., concurred.

A petition for a rehearing was denied August 28, 2007.