Filed 12/5/22  Patton v. Walter CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JACK T. PATTON,<br><br>    Plaintiff, Cross-Appellant and Respondent.<br><br>v.<br><br>SALLY PATTON WALTER, et al.,<br><br>    Defendants, Cross-Respondents and Appellants, | 2d Civil No. B293694<br>(Super. Ct. No. 56-2007-00288787-PR-PW-VTA)<br>(Ventura County) |

Sally Patton Walter, individually and as trustee of the Patton Family Trust dated February 7, 2002, and Jodi Patton Ream appeal from orders of the probate court overruling their objections to their brother Jack Patton's Supplement to Complaint for Imposition of Constructive Trust and Petition to Determine Entitlement to Share of Trust Assets and referring

the matter to a referee.[1]  Jack Patton cross-appeals, contending the probate court should have entered an order distributing certain assets to him, without reference to a referee.  We conclude the probate court erred.  Jack's Supplement to Complaint for Imposition of Constructive Trust and related petitions are based on the same cause of action he alleged in a prior civil action, *In re Lowell T. Patton Trust*, Ventura Sup. Ct. No. 56-2007-00288787.  The final judgment in that action precludes litigation of the claims alleged here.  Accordingly, we reverse the probate court's order of September 20, 2018 appointing a referee, and its order of October 10, 2018 rejecting appellants' objections to respondent's petitions.  Our resolution of the appeal renders Jack's cross-appeal moot.

*Facts and Procedural History*

In 2002, Lowell T. Patton and his wife, Mary Lou Patton, signed pour-over wills and established the Patton Family Trust.  The Patton Family Trust was revocable during the joint lifetimes of the settlors, Lowell and Mary Lou.  On the death of the first settlor, it divided into three trusts:  a Survivor's Trust (A), a Decedent's Trust (B) and a Qualified Terminable Interest Trust or Marital Trust (C). Trusts B and C became irrevocable on the death of the first settlor and provided for a life estate to the surviving settlor.  After the survivor passed away, the remainder would be divided equally between their three children, appellants Sally Patton Walter and Jodi Patton Ream, and respondent Jack T. Patton.

Lowell and Mary Lou also established three charitable remainder unitrusts (CRUTs).  These irrevocable

---

[1] Like the trial court and the parties, we use the first names of the parties for clarity, intending no disrespect.

2

trusts pay income to the Pattons' three children for a defined period of time and then distribute the remainder to designated charities. The Pattons owned a minor league baseball team. To fund the CRUTs, they incorporated the team and transferred the shares of stock into each CRUT.

Mary Lou died in April 2002. By the summer of 2003, Lowell was dissatisfied with the 2002 estate plan. Among other things, he came to believe that the lawyers and estate planner who designed it had used the CRUTs to sell the baseball team without his consent. Sally and Jodi agreed with their father. Jack, who worked as the team's general manager, supported the sale and worked with the lawyers to close the transaction. After the sale closed, in November 2004, Jack's CRUT received 60% of the proceeds. The CRUTs established for Sally and Jodi each received 20%.

In October 2003, Lowell granted his power of attorney to Sally. With respect to his employee retirement and other benefits, the power of attorney states: "The agent is authorized to establish one or more [IRAs] and employee benefits plans . . . on my behalf, to contribute to any IRA or plan held in my name, to roll over or direct transfers of plan benefits into other retirement plans or IRA accounts . . . , to manage the account, to withdraw from any account without limitation, to select or change payment options and to apply for and make any elections under any IRA or employee benefit plan in which I am a participant . . . , to take possession of all such benefits, and to distribute such benefits to or for my benefit. The agent shall have the power to designate and change beneficiaries who are either my spouse or my descendants or their spouses, except the

3

agent may not designate himself or herself without a showing that such designation is my intention."

In February 2005, Lowell revoked the Survivor's Trust (A) of the 2002 Patton Family Trust and created the Lowell T. Patton Trust (the 2005 Trust). He also executed a new pour-over will, naming the 2005 Trust as his sole beneficiary. Sally is the trustee of the 2005 Trust. She and Jodi are its sole beneficiaries; Jack is excluded. About eight months later, in October 2005, Lowell signed a Designation of Beneficiary naming the 2005 Trust as the beneficiary of his IRAs and of the Lowell T. Patton Profit Sharing Plan. Sally also signed the document as his power of attorney.

Lowell filed lawsuits against the charitable beneficiaries of the CRUTs. He also sued the lawyers and the estate planner, alleging causes of action for breach of fiduciary duty, professional negligence, fraud on various theories and elder financial abuse. After Lowell's death, Sally amended the complaint to name Jack as a defendant, on the theory that he aided and abetted the wrongdoing of the other defendants. The claims against most of the charities were settled. We have recently resolved the remaining claims in a related appeal, *Walter, et al. v. Estate Strategies, Inc., et al.*, No. B280172.

Lowell died in April 2007. Sally presented his 2005 will for probate. Jack filed petitions to contest the 2005 will and trust, and for an accounting, all on the theories that, in 2005, Lowell lacked capacity to change his 2002 will and trust and that the changes were the result of undue influence by Sally and Jodi.

Jack also filed a complaint for imposition of a constructive trust in which he alleged that he and his sisters were named as beneficiaries of Lowell's profit sharing plan and

4

IRAs in a 1999 Designation of Beneficiaries. Jack further alleged that the October 2005 Designation of Beneficiary was void because Lowell was not competent when he signed it and Sally's power of attorney did not include the authority to change the beneficiaries of the Retirement Assets. In his prayer for relief, Jack requested, "That the court determine that the [2005 Designation of Beneficiary] is not a valid or enforceable Revised Beneficiary Designation, and that assets of the decedent shall pass by prior [1999 Designation of Beneficiaries] executed by decedent at a time when he was fully competent and not subject to undue influence."

Jack's trust and will contests and his complaint relating to the Retirement Assets were consolidated. After a 34-day non-jury trial, the trial court issued a statement of decision which became its "final decision and judgment." The trial court found that Lowell's revocation of his 2002 Survivor's Trust (A), execution of the 2005 will and establishment of the 2005 Trust were not the product of undue influence and that these documents reflected Lowell's "own free will and intent." Lowell intended to exclude Jack as a beneficiary of the 2005 Trust and had personal reasons for doing so, including Jack's participation in the sale of the baseball team. The 2005 will and trust are "fully valid and enforceable."

The trial court further found that the October 5, 2005 Designation of Beneficiary was not valid or enforceable because Lowell lacked capacity when he signed it. Sally's power of attorney did not authorize her to designate the 2005 Trust as the beneficiary of the Retirement Assets. As a result, the 2005 Designation of Beneficiary did not "achieve a valid testamentary transfer."

5

Although the trial court found the 2005 Designation of Beneficiary invalid, it did not impose a constructive trust on the Retirement Assets because it found Jack "proved no entitlement to such . . . relief." It noted that, "Counsel advised the trial court that they will ask the Probate Court to determine what IRAs and retirement plans are encompassed by the 10/5/05 Designation of Beneficiary; to ascertain the effect of the same assets being covered by other testamentary instruments; and to judge whether or not the retirement monies pass into the 2/17/05 Lowell T. Patton Trust through Lowell's 2/21/05 pour-over will." The trial court did not, however, issue a declaratory judgment that Jack is entitled to any portion of the Retirement Assets nor did the judgment expressly reserve that issue for consideration by the probate court or remand the matter to the probate court for that purpose.

The trial court later clarified, in response to objections by Sally and Jodi, that it, "makes no finding with respect for the *need* for Sally Patton Walter, as the POA-holder, to use a beneficiary designation to effectuate a transfer of Lowell's 'IRA and employee benefits' assets to the 2/17/05 Lowell T. Patton Trust. The trial court's ruling is limited to the issue presented to it, which was whether the 10/5/05 beneficiary designation validly effectuated that transfer." The trial court "affirm[ed] its Statement of Decision as its final decision and judgment in these consolidated cases." Jack filed a Notice of Entry of Judgment on July 10, 2013. Neither party appealed.

More than two years after the entry of this judgment, Jack filed in the probate court a "Supplement to Complaint for Imposition of Constructive Trust [Civil Code § 2224]; Petition for Delivery of Property Pursuant to Probate Code § 850(a)(2)(C)."

6

The pleading sought an order that he is a beneficiary of the Retirement Assets, an accounting, and distribution to him of his share of the Retirement Assets. Appellants answered the Supplement to Complaint after being ordered by the probate court to do so. Their answer admits that all three Patton siblings were named as contingent beneficiaries of a profit sharing plan and trust established by Lowell Patton.

Sally filed a declaration in which she stated that she used her power of attorney to terminate Lowell's profit sharing plan (one of the Retirement Assets) in October 2005. Funds from that plan were deposited into accounts for Lowell's benefit, including an IRA and an annuity fund. Sally stated that she was "unaware of any account maintained for the benefit of my father that included Jack Patton as a direct or contingent beneficiary."

After reviewing the parties' briefs, the probate court overruled appellants' objections based on res judicata, collateral estoppel, laches and the statute of limitations. It reasoned that the trial judge in the civil action "denied the remedy of constructive trust to Jack Patton, but referred the determination of the entitlement to retirement funds back to the Probate Court for determination. The decision denying the *remedy* of constructive trust was not *res judicata* of the issue of entitlement to retirement funds. The court did grant the *remedy* of invalidation of the [2005] designation."

It found Jack's claims were not barred by collateral estoppel because "there was no finding against Jack Patton on the merits of his claims. His claimed remedy was denied on procedural grounds, but a remedy is not a cause of action, it is a remedy." The probate court concluded Jack's claim was not barred by a statute of limitations because he filed his Supplement

to Complaint within two years of learning appellants continued to deny his right to a share of the Retirement Assets and because the "existence of the litigation since 2008 has tolled any other statutes of limitations." The probate court referred all remaining issues to a referee for resolution.

*Contentions*

Sally, Jodi and the Patton Family Trust contend the probate court erred as a matter of law because the final judgment in the prior action precludes continued litigation on matters that were decided or could have been decided in that judgment. Jack contends his claim to a share of the Retirement Assets is still alive because the prior judgment recognizes that he is a beneficiary of the Retirement Assets even if he is not entitled to the imposition of a constructive trust on those assets.

*Standard of Review*

The probate court concluded that Jack's Supplement to Complaint and related petitions are not barred by the doctrines of res judicata and collateral estoppel, by any statute of limitations or by the doctrine of laches. We review these conclusions de novo. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *Smith v. ExxonMobil Oil Corp.* (2007) 153 Cal.App.4th 1407, 1414-1415.)

*Discussion*

In his Complaint for Imposition of Constructive Trust in the prior action, Jack alleged that he was originally an alternate beneficiary of the Retirement Assets and that the 2005 Designation of Beneficiary was signed by Lowell when he lacked testamentary capacity and under the undue influence of Sally and Jodi. He asked the trial court to "determine that the [2005

8

Designation of Beneficiary] is not a valid or enforceable [designation], and that the assets of the decedent shall pass by prior Original Beneficiary Designation . . . ." The judgment in the prior action found that Sally and Jodi did not exercise undue influence over Lowell, but that the 2005 Designation of Beneficiaries was invalid because Lowell lacked testamentary capacity when he signed it and Sally's power of attorney did not authorize her to name the 2005 Trust, rather than individuals, as beneficiary of the Retirement Assets. The trial court found Jack had not proven he was entitled to the imposition of a constructive trust. It made no finding on the question whether he is entitled to a share of the Retirement Assets, nor did it expressly reserve that question for determination by the probate court.

Jack's "Supplement to Complaint," filed in the probate court, alleged Sally and Jodi had taken the position that the Retirement Assets "pass under the will" of their father, denying Jack had any interest in those assets. He asked the probate court, "For an order that he is a beneficiary under the retirement plans," "for an accounting of the . . . plan benefits" and for "distribution to [Jack] of his share of said plan assets."

The doctrine of res judicata, or claim preclusion, "precludes the relitigation of a cause of action that previously was adjudicated in another proceeding between the same parties or parties in privity with them." (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202.) Res judicata applies if: (1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior proceeding. (*Boeken v. Philip Morris USA, Inc.*

9

(2010) 48 Cal.4th 788, 797 (*Boeken*).) Where these criteria are met, res judicata bars the litigation not only of issues that were actually decided in the prior action, but also issues that could have been decided in that action. (*Federation of Hillside & Canyon Assns., supra,* at p. 1202; see also *Ideal Hardware & Supply Co. v. Department of Employment* (1952) 114 Cal.App.2d 443, 447 [prior judgment is a bar to subsequent action on the same cause of action and "all matters that were litigated or that could have been litigated"].) The doctrine applies in probate matters as it does in civil actions. (*Estate of Dito* (2011) 198 Cal.App.4th 791, 801-802.)

California defines a cause of action by applying the "'primary rights'" theory, "under which the invasion of one primary right gives rise to a single cause of action." (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795.) The primary right "'is simply the plaintiff's right to be free from the particular injury suffered. . . .'" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896, quoting *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681-682.) Under the primary right theory, "'[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. "Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term. . . .'"'" (*Boeken, supra,* 48 Cal.4th at pp. 797-798, quoting *McKee v. Dodd* (1908) 152 Cal.637, 641.)

Here, the primary right asserted by Jack in the prior action is the right to a share of the Retirement Assets as a beneficiary of Lowell's IRAs and profit sharing plans. The corresponding duty is Sally's duty as Lowell's trustee, executor

10

and agent under the power of attorney to distribute the Retirement Assets according to Lowell's instructions. The alleged breach of duty is Sally's refusal to distribute Jack's share of the Retirement Assets to him. Jack alleges the same primary right, duty and breach in the Supplement to Complaint. We conclude the Supplement to Complaint alleges the same cause of action as the prior Complaint for Imposition of Constructive Trust.

Jack contends his Supplement to Complaint is not barred by res judicata because, although the prior judgment denied him the remedy of a constructive trust, it also established that he is a beneficiary of the Retirement Assets. In his view, the prior judgment found that a wrong had been committed – the attempted change in beneficiaries – and left the remedy for that wrong to be decided by the probate court. But the prior judgment did not include those findings. The judgment does not state that Jack is a beneficiary of the Retirement Assets or that a prior designation of beneficiaries governs distribution of those assets.

Nor did the judgment remand, transfer or otherwise "carve out" the issue of Jack's available remedies for adjudication by the probate court. (See, e.g., *Northrop Corp. v. Chaparral Energy* (1985) 168 Cal.App.3d 725, 730; 7 Witkin, Cal. Procedure (6th ed. 2021), Judgment, § 411, p. 931.) The statement of decision notes, "Counsel advised the trial court that they will ask the Probate Court to determine what IRAs and retirement plans are encompassed by the 10/5/05 Designation of Beneficiary; to ascertain the effect of the same assets being covered by other testamentary instruments; and to judge whether or not the retirement monies pass into the 2/17/05 Lowell T. Patton Trust through Lowell's 2/21/05 pour-over will." No reference to this advice was included in the minute order enumerating the trial

11

court's findings after trial, the "conclusions" section of its statement of decision, the June 28, 2013 order overruling appellants' objections to the statement of decision, or the Notice of Entry of Judgment. We conclude the prior judgment did not refer any issues to the probate court for resolution.

Jack's status as a beneficiary and his entitlement to a share of the Retirement Assets were not outside the scope of the issues presented to the trial court in the prior action. His complaint asked the court to determine "that assets of the decedent shall pass by" the 1999 Designation of Beneficiaries. When that determination was not made, Jack could have objected to the statement of decision or appealed. He did not and the judgment became final. The judgment now precludes continued litigation over issues that were actually decided or could have been decided in the prior judgment. (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160 [prior judgment conclusive on any matter "'within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised . . .'"].)

Jack contends the prior judgment was not a final judgment on the merits of his cause of action but was, instead, only a determination that he was not entitled to a specific remedy. He relies on the general rule that, "If the plaintiff, with a good cause of action, seeks a remedy to which he or she is not entitled . . . judgment may be rendered against the plaintiff. Nevertheless, the plaintiff may sue again on the same cause of action." (7 Witkin, *supra*, Judgments, § 441, p. 974.) This rule applies where "the judgment, although final, is not on the merits. Recovery was denied not for substantive defects in the plaintiff's claim but for procedural reasons." (*Ibid*.)

12

The prior judgment here was entered after a trial on the merits, not for "procedural reasons." The trial court found Jack did not carry his burden to prove that he was entitled to a constructive trust. This is a finding on the merits, not the process. Although the trial court failed to make express findings on every issue presented to it, its final judgment is "'*res judicata* on matters which were raised or could have been raised, on matters litigated or litigable.'" (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 185–186, quoting *Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 755.)

Because the judgment in the prior action precludes relitigation of Jack's entitlement to a share of the Retirement Assets, the trial court erred when it rejected appellants' res judicata objection and referred the matter to a referee. It is unnecessary for us to reach appellants' remaining contentions.

*Cross Appeal*

Our resolution of the res judicata issue renders Jack's cross-appeal moot. Our discussion of res judicata principles dictates that whatever rights Jack may have had to the assets (which he claims are one-third his) are now precluded by reason of the finality of Ventura Superior Court case no. 56-2007-00288787.

*Disposition*

The order dated September 20, 2018 (Order for Referral to Lawrence Sorensen) and the order dated October 10, 2018 (Partial Order re: Petition to Determine Entitlement to Share of Trust Assets; Petition for Delivery of Property Pursuant to Probate Code section 850(1)(2)(c)) are reversed. The cross-appeal is dismissed as moot. Costs to appellants.

13

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

14

Glen Reiser, Judge

Superior Court County of Ventura

_____


Smith law Firm and Craig R. Smith, for Defendants, Cross-Respondents and Appellants.

Thomas E. Olson, for Plaintiff, Cross-Appellant and Respondent.