Filed 2/25/21  Zhao v. Global Valley CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JESSIE ZHAO, | B304372 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No.BC597103) |
| GLOBAL VALLEY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph Hammock, Judge.  Affirmed.

Gonzalez & Gonzalez, Rosendo Gonzalez and Zachary Gonzalez for Plaintiff and Appellant.

Wright Kim Douglas, J. Andrew Douglas, David Kim and Max Yueh for Defendants and Respondents.

# INTRODUCTION

Plaintiff Weijing "Jessie" Zhao sued David Kuo and Global Valley, LLC, asserting that Zhao invested in and was part owner of Global Valley, which Kuo managed, but Kuo never repaid Zhao her investment or provided her with required information about the company. Defendants moved for summary judgment on the basis of issue preclusion, asserting that Zhao's contentions about ownership in Global Valley had been fully litigated and decided against her in a previous action. The trial court granted the motion and entered judgment in favor of defendants.

We affirm. The previous judgment addressed the identical issue of whether Zhao had an ownership interest in Global Valley, and Zhao had a full and fair opportunity to assert her contentions in the underlying action. Issue preclusion therefore bars Zhao's claims.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint

Zhao's original complaint was apparently filed on October 8, 2015; it is not included in the record on appeal. The first amended complaint (FAC), filed January 8, 2016, is the operative complaint for purposes of the motion for summary judgment. In the FAC, Zhao asserted that she was a member and 50 percent shareholder of Global Valley, and defendant Kuo was a member, manager, and 50 percent shareholder of Global Valley. Zhao asserted that she included Global Valley "as a nominal defendant for the sole purpose of a Court ordered accounting and dissolution."

Zhao alleged that she provided $2,250,000 in cash contributions to Global Valley, but from the time of Global Valley's inception in 2009 through December 2014, Kuo never

2

provided Zhao with  financial statements or  other information about the business.  Zhao asserted that in November 2014 she discovered that Kuo had removed her name from Global Valley's tax returns in 2012.  She alleged that in November 2014, Kuo had Zhao sign a document that was backdated to January 2, 2012, purporting to transfer Zhao's 50 percent interest in Global Valley to Kuo in exchange for $2,800,000.  Kuo told Zhao that the document was intended to resolve issues with the Internal Revenue Service, and would not be used for any other purpose.

Zhao alleged that she learned in December 2015 that in March 2015, Kuo had transferred the company's main asset, three parcels of land in San Gabriel, to an entity called Jia Jia US Investment Company, Inc., which later changed its name to San Yi US Investment Company, Inc.  Zhao alleged she was never informed of this transaction.

Zhao alleged nine causes of action.  In the first two causes of action for breach of fiduciary duty and breach of the "obligation of good faith and fair dealing," Zhao alleged that Kuo failed to provide Zhao with financial records for Global Valley, and fraudulently induced Zhao to transfer her share of the company to Kuo.  In the third and fourth causes of action for breaches of the Corporations Code, Zhao alleged that Kuo failed to obtain Zhao's consent before transferring Global Valley to a third party, and failed to provide financial documents to Zhao.  In the fifth cause of action for fraud, Zhao alleged that Kuo defrauded her into transferring her share of Global Valley to him; in the sixth cause of action for rescission of contract, Zhao requested that the transfer be rescinded.  In the seventh cause of action Zhao requested a constructive trust; in the eighth cause of action she

3

requested an accounting, and in the ninth cause of action she requested a judicial dissolution of Global Valley.

## B. Motion for summary judgment

Defendants filed a motion for summary judgment asserting that Zhao's claims were barred by collateral estoppel. They contended that Zhao's claims relied on her having an ownership interest in Global Valley, but another court had already determined that Zhao did not have an interest in Global Valley.

Defendants' motion and related request for judicial notice, along with Zhao's opposition and related evidence, reveal the nature of the parties' dispute. Kuo formed Global Valley in 2009 to build, operate, and manage a real property and hotel in San Gabriel called the Crowne Plaza Hotel. Kuo stated in a declaration that one of the investors in Global Valley was East Asia Investment Group, Inc., which was owned by Kuo's friend and Zhao's uncle, Yue "Gary" Zhao.[1] However, documents relating to Global Valley show that Zhao, not Yue,[2] was an investor in and member of Global Valley. Kuo asserted Zhao was only listed as a straw investor due to restrictions relating to Zhao's student visa status and her family's residency in China, and Yue/East Asia was the only true investor.[3] Zhao asserts that

---

[1] Zhao objected to the portion of Kuo's declaration stating these facts, and the court overruled the objection.

[2] We refer to Yue by his first name for clarity; no disrespect is intended.

[3] Kuo's testimony on this point is not entirely clear. He testified that the investment came from Yue, and "Weijing Zhao's name was merely used for the purpose of this investment. [¶] In addition to that, back then she held an F1 student visa. As a student, she was not allowed to make an investment. Furthermore, due to her father's identification and status, who

the Global Valley tax returns and other documents showing her as the investor are accurate.

Yue died in March 2015.  In May 2015, Global Valley sold its assets, and $750,000 from the sales proceeds was held in the trust account of a law firm that represented Global Valley.

On February 29, 2016—about seven weeks after Zhao filed the FAC in this case—Global Valley's law firm filed an interpleader action because "it was unclear who was entitled to [the] $750,000 in proceeds from Global Valley's sale of the Hotel . . . particularly in light of certain transfers of property as a result of a marital settlement agreement" between Yue and his ex-wife, Jennifer Tan.  Zhao was named as one of the defendants in the interpleader action.  The law firm stated in its complaint that Yue's estate might be entitled to the funds, Tan contended that entitlement to the funds was disputed, and Zhao claimed she was entitled to the funds.  The law firm asked the court to resolve the conflict.

In the interpleader action, Zhao argued that the disputed $750,000 was from the proceeds of the sale of Global Valley's assets, and because Zhao was a 50 percent owner of Global Valley, she was entitled to at least part of the disputed funds. Zhao filed a demurrer asking the court to dismiss the interpleader action because her entitlement to the funds was already being litigated in this case, which was filed first.  Zhao asserted that the interpleader action and the earlier-filed action

was working in China, her family would not – would be improper for her family to invest here."

"involve the same parties and same cause of action."[4]  Defendants stated that Zhao later withdrew the demurrer.

The interpleader action went to trial over three days before Judge Elizabeth R. Feffer, who took the matter under submission on February 2, 2018.  In a statement of decision following the trial,[5] the court stated that Yue controlled East Asia Investment Group, Inc., and he had been married to Tan for 25 years before they divorced.  A marital settlement agreement between Yue and Tan assigned to Tan a "business interest held in the name of East Asia," including interests in Crowne Plaza.  The marital settlement agreement was entered as a judgment on February 14, 2017.

The court noted that in January 2015, Zhao testified in a deposition in Yue and Tan's divorce proceeding that she did not invest in Global Valley[6]:

"Question: Did you invest any funds in Global Valley LLC?
Answer: No.

---

[4]Although Zhao asserted that the law firm was included as a defendant in this case, the record on appeal does not suggest as much.

[5]Zhao and defendants cite the interpleader court's tentative statement of decision signed on February 23, 2018, as the court's statement of decision.  This statement of decision notes that it is tentative and subject to objection by the parties.  A minute order included in the record stated that on April 9, 2018 the court issued a final statement of decision, which does not appear to be in the record on appeal.  Because the parties do not dispute that the tentative statement of decision reflects the interpleader court's final analysis, we also rely on that version.

[6]The statement of decision does not make clear why Zhao testified as a part of Yue and Tan's divorce proceeding.

6

[Question:] Did you ever invest in a hotel called Crown[e] Plaza?

Answer: No."

In a second exchange the court quoted, Zhao testified again that she did not invest in Global Valley:

"[Question:] . . . . Did you invest $2,250,000 into Global Valley LLC in 2009?

Answer: No."

The court stated that at the interpleader trial, by contrast, Zhao testified that she had invested over $3.5 million in Global Valley. When asked about her contradictory testimony in the divorce, Zhao said she had been confused by the term "investment." The court noted that although Zhao used a Mandarin interpreter in the divorce deposition, in the interpleader action she testified in English that she had been in the United States since she was 16 or 17 years old, and she had attended high school in San Marino; college at the University of California, Irvine; and graduate school in Las Vegas—all with instruction in English. The court also noted, "Prior to the Final Settlement [*sic*] Conference on August 2, 2017, [Zhao] failed to file an exhibit list, witness list or trial brief. . . . [Zhao's] exhibits and witness testimony, other than those witnesses and exhibits offered by [Tan], were excluded."

The court stated, "The court finds that [Zhao's] trial testimony regarding having invested any amount of funds into Global Valley or Crowne Plaza is not credible. . . . The court also finds that [Zhao's] trial testimony that she had any actual interest in Global Valley to not be credible." The court further noted that Zhao testified she had assigned any interest she had in Global Valley to Kuo in November 2014. The court stated that

7

it appeared Zhao was using the interpleader action to attempt to effectively set aside the judgment in Yue and Tan's divorce. The court ordered the disputed funds at issue to be distributed to Tan. Zhao appealed the court's judgment, but later abandoned the appeal.

In their motion for summary judgment, defendants argued that each of Zhao's causes of action relied on her having an interest in Global Valley as an investor and member, but that fact had already been fully litigated and rejected in the interpleader action. Defendants asserted, "This lawsuit is yet another improper attempt by [Zhao] to collaterally attack an issue that has been previously decided. A court has already determined that [Zhao] has no interest in Global Valley. That decision is binding on her here." Defendants argued that summary judgment was warranted because collateral estoppel provided a complete defense to each of Zhao's causes of action.

## C.    Opposition

In her opposition to defendants' motion for summary judgment, Zhao asserted that collateral estoppel and res judicata were not applicable to her claims. She contended that Kuo issued her a stock certificate for 50 percent of Global Valley in July 2009, and Kuo and Zhao confirmed in writing that "member Weijing Zhao contributed two million two hundred fifty thousand dollar [*sic*] ($2,250,000) cash." Zhao argued that tax returns and other documents also showed that she was part owner of Global Valley. Beginning in 2012, tax returns showed that Kuo or his family members were the members of Global Valley. Zhao alleged that following the May 2015 sale of Global Valley's assets, "no disbursements were actually made from the sale proceeds to

8

any of the members of Global Valley," but instead, Kuo made "payments to companies related to and/or controlled by Kuo."

Zhao asserted that her claims were not precluded by the decision in the interpleader action. She contended that in this case she was seeking the recovery of approximately $2.8 million that she invested in Global Valley, in contrast to the $750,000 at issue in the interpleader action, and therefore the claims were not the same in the two cases. She also asserted that different parties were involved in the interpleader action, since Kuo and Global Valley were not parties in that case. Zhao argued that "[a]s a result, the doctrines of collateral estoppel and/or res judicata are not applicable in this lawsuit."

Zhao further asserted that the interpleader appeal was resolved through settlement agreements addressing multiple litigations involving Zhao; Tan; and Yue and Tan's son Zidan Zhao, acting individually, as executor as Yue's estate, and on behalf of East Asia Investment Group. Zhao asserted that in the settlement agreement addressing the interpleader action, "J. Tan agreed that W. Zhao is the sole holder of any claims or causes of action as to Global Valley." Zhao argued that as a result, "W. Zhao, and not J. Tan, . . . is the rightful and only party that can proceed and assert the causes of action against the Defendants in the case before this Court."

Zhao also asserted that even if collateral estoppel did apply, any prior decision should not be enforced because "Kuo's evasive and misleading testimony in the Interpleader Action" constituted extrinsic fraud. She noted that Kuo testified in the interpleader action that Yue and East Asia invested in Global Valley, and "Weijing Zhao's name was merely used for the purpose of this

9

investment." However, Kuo acknowledged that the tax returns he signed stated that Zhao was a member of Global Valley.

## D.    Reply

Defendants asserted that Zhao was "using the exact same evidence that she submitted in the Interpleader Action in an effort to relitigate Judge Feffer's decision. Indeed, while that Court considered evidence on both sides of the issue as to whether [Zhao] had an actual ownership issue [*sic*] in Global Valley, that issue was, ultimately and definitively, decided against [Zhao]." Defendants requested judicial notice of Zhao's exhibit list and closing trial brief from the interpleader action, asserting that her opposition to the motion for summary judgment "simply makes the same arguments based on the same evidence from the Interpleader Action."

Defendants also asserted that the settlement agreement from the interpleader action did not support Zhao's claims, because it showed only that Tan waived any claims against Global Valley, and did not "undo Judge Feffer's decision on the issue that is dispositive of all [of Zhao's] claims." In addition, defendants argued that although Zhao claimed that there was fraud in the interpleader action, she "fails to identify what the alleged fraud was, how that alleged fraud prejudiced her ability to argue her position in the Interpleader Action and/or how [Zhao] did not know about that alleged fraud earlier." Defendants asserted that Kuo's testimony had been consistent, but even if it had not, inconsistencies in testimony or other evidence did not constitute fraud.

## E.    Hearing and ruling

The court issued a tentative ruling granting the motion for summary judgment. The court granted defendants' requests for

10

judicial notice of documents from the interpleader action. The court noted the question presented was "whether the previous findings of another department of this Court meet the requirements for collateral estoppel or whether there is a genuine dispute of material fact as to whether collateral estoppel applies." The court found there had been a final adjudication in the interpleader action, and the parties' settlement agreement "does not . . . render the judgment in the interpleader action less than final." The court also found that Zhao's claim to an interest in Global Valley was identical to the one she asserted in the interpleader action, and the issue had been actually litigated in that case. The court stated, "[G]iven that another department of this Court already expended resources to determine the factual issue that [Zhao] attempts to relitigate here, the Court finds that the application of the doctrine of collateral estoppel to this issue will promote judicial economy and the integrity of the judicial system." The court also rejected Zhao's claim of extrinsic fraud, noting that she did not "point to new evidence that was not considered in the interpleader action."

At the hearing on December 19, 2019 before Judge Randolph M. Hammock, Zhao's counsel contended for the first time that the case had not been "actually litigated" in the interpleader action. Zhao's counsel noted that the court's tentative ruling cited *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 401 (*Murphy*), which states, "A party urging collateral estoppel must prove that the issue was actually litigated *and that the evidence was not restricted*, but need not establish that oral testimony, or any particular type of evidence was presented." (Emphasis added.) Zhao's counsel argued that the evidence in the interpleader action was restricted, because Judge Feffer

11

barred Zhao from presenting evidence or witnesses after she failed to follow a local rule regarding the timing of pretrial disclosures. Zhao's counsel argued that Zhao had been "prevented from introducing a single exhibit or calling a witness," and asked to introduce Judge Feffer's order and a transcript.

The court noted that Zhao failed to present evidence or argument to support this argument in her opposition to the motion for summary judgment. However, the court agreed to "consider [Zhao's] point about whether Judge Feffer's evidentiary ruling was to the effect that resulted in a travesty of justice," such that collateral estoppel should not apply. The court agreed to take judicial notice of additional documents from the interpleader case, and took the issue under submission.

Later the same day, the court issued a written ruling granting defendants' motion for summary judgment. The ruling included the analysis in the written tentative ruling, and also addressed Zhao's arguments from the hearing. The court rejected Zhao's interpretation of *Murphy*, stating, "It is non-sensical [*sic*] to assert that [in] every case where there is an issue preclusion analysis, this Court must first determine whether material evidence in the prior case was 'restricted,' and if it was," determine if the prior decision lacked collateral estoppel effect as a result. The court also stated that evidence restricted due to a discovery sanction "willfully caused by a party . . . cannot mean that a resulting final judgment does not have res judicata/collateral estoppel effect. That would be absurd, and would simply give incentive for a party to violate rules . . . ." The court noted that if Zhao felt Judge Feffer's rulings were unfair or resulted in a miscarriage of justice, she could have appealed; but Zhao abandoned her appeal and "[h]aving agreed to let that

judgment stand, it would be unfair to allow [Zhao] to attack it collaterally here." The court also stated that the documents from the interpleader action showed that Zhao "was allowed to make a full and complete argument on her alleged ownership" in Global Valley, "which is the same issue in this case." The court concluded, "No matter how you spin it, the simple fact is that [Zhao] in this case is merely attempting to re-litigate the exact ownership issue which was adequately and fairly presented in the interpleader action."

The court entered judgment in favor of defendants. Zhao timely appealed.

## DISCUSSION

On appeal, Zhao asserts that the trial court erred in granting defendants' motion for summary judgment. She asserts four arguments: that the issue litigated in the interpleader action was not identical to the issues presented here, that the issues in the interpleader action were not "actually litigated" due to Judge Feffer's limitation of Zhao's evidence, that the interpleader judgment was based on Kuo's fraud, and that the trial court erred in overruling Zhao's objection to Kuo's declaration. Defendants assert that the trial court was correct in finding that collateral estoppel bars Zhao's claims, and that the court did not err in overruling Zhao's evidentiary objection. We find no error and affirm.

Summary judgment is appropriate when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant may establish that a cause of action has no merit by demonstrating that there is a complete defense to that cause of

13

action. (*Id.*, subd. (p)(2).) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "We review the trial court's grant of summary judgment de novo and decide independently whether the parties have met their respective burdens and whether facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484.) "[A] trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)

Each cause of action alleged in Zhao's FAC relies on allegations that Zhao invested in Global Valley and that Kuo owed her certain duties as a result of her membership in Global Valley. Thus, if the court in the interpleader action determined that Zhao had no ownership interest in Global Valley, and that determination precludes Zhao from asserting otherwise in this action, summary judgment in favor of defendants is appropriate.

California courts "now refer to 'claim preclusion' rather than 'res judicata' [citation], and use 'issue preclusion' in place of 'direct or collateral estoppel.'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.) Claim preclusion "'prevents relitigation of the same cause of action in a second suit between the same parties or

14

parties in privity with them.'" (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).) By contrast, issue preclusion "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*Ibid.*)

Claim preclusion does not apply here, because the interpleader action involved Zhao, Tan, and Global Valley's law firm; it did not involve the same parties as this case. In addition, the interpleader action involved rights to $750,000 in disputed funds, and therefore did not involve the same causes of action as Zhao has alleged here. We therefore focus solely on issue preclusion.

"[I]ssue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*DKN Holdings, supra,* 61 Cal.4th at p. 825.) It is undisputed that the interpleader action resulted in a final adjudication, and that Zhao was a party to that action.

## A. Identical issue

Zhao contends that "the legal and factual issues in the Interpleader Action were not 'identical' to those" in this case. She asserts that the issue here is "whether W. Zhao was entitled to recover any damages for Kuo's acts and conduct of having taken or embezzled [money] from Global Valley, without paying back anything to W. Zhao on her $2,250,000 initial investment," which she contends was not decided in the Interpleader Action. Defendants argue that the interpleader action directly addressed the factual basis upon which all of Zhao's claims rely: whether Zhao had an ownership interest in Global Valley.

15

"The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.)  Thus, "when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot be relitigated . . . in a future lawsuit."  (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 249.)  In addition, "findings that were important to the court's decision may be binding even if they were not themselves dispositive of an ultimate legal issue." (*Key v. Tyler* (2019) 34 Cal.App.5th 505, 534-535.)

In the interpleader action, the court's statement of decision made clear that Zhao asserted she was entitled to the disputed funds "as partial payment of her alleged investment in Global Valley of $2.8 million which investment she asserts has not been repaid."  Zhao also asserted that "the interest in Global Valley represented by the Disputed Funds belongs to [Zhao] and has never belonged to East Asia/Yue Zhao."  The court rejected these claims, finding that Zhao's "trial testimony regarding having invested any amount of funds into Global Valley or Crowne Plaza is not credible. . . .  The court also finds that [Zhao's] trial testimony that she had any actual interest in Global Valley to not be credible."  Based on the finding that Zhao had no interest in Global Valley, the court awarded the disputed funds to Tan.

Zhao's claims here rely on an identical underlying premise: that Zhao invested in Global Valley, had an interest in it, and is entitled to funds from Global Valley based on that interest.  The interpleader court directly addressed and rejected that contention.  Thus, the "identical issue" factor is met here.

16

## B. Actually litigated

Zhao further contends that the issue was not "actually litigated" in the interpleader action because "Judge Feffer prevented W. Zhao from introducing any exhibits or witnesses at trial in the Interpleader Action." In the interpleader action, the court found "that defendant Zhao did not comply with the Final Status Conference filing rules and will not be allowed to offer documents or witnesses from the untimely filed witness and exhibit lists." Zhao again relies on *Murphy, supra*, 164 Cal.App.4th at p. 401, which states, "A party urging collateral estoppel must prove that the issue was actually litigated and that the evidence was not restricted . . . ." She argues that the evidence was "restricted" by Judge Feffer, so Zhao "was not afforded a 'full and fair opportunity' to present her case."

We disagree. "[W]here, as here, the party to be estopped was a party who participated in the earlier proceeding, due process requires that this party must have had an adequate incentive to fully litigate the issue in the prior proceeding [citation], and must have had a fair opportunity to pursue [her] claim the first time." (*Murphy, supra*, 164 Cal.App.4th at p. 404.) Zhao had notice of the interpleader action; she appeared throughout the proceedings; she testified at trial; she cross-examined the other witnesses at trial, including Kuo; and she had every incentive to assert arguments to establish her interest in Global Valley, because that was the central issue in the action.

To the extent Zhao's ability to present any evidence was limited, any such limitation resulted from her own actions. Judge Feffer limited Zhao's presentation of evidence because she failed to follow local rules regarding the timing of pretrial disclosures. Although Zhao could have challenged this ruling in

17

her appeal of the interpleader judgment, she abandoned that appeal and allowed the judgment to stand. Zhao now argues that Judge Feffer's ruling was "improper," "inexplicable," "contradicted by a number of legal authorities," and an "excessive decision to penalize" Zhao.  However, she may not collaterally attack the interpleader judgment in a separate litigation because she was unsatisfied with the result.[7]  (See, e.g., *OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1328 ["[A] judgment that is valid on the face of the record is generally not subject to collateral attack. [Citation.] In other words, a judgment that is valid on the face of the record must be challenged by direct attack, such as a motion in the original action, an appeal in the original action, or an independent equitable action."].)

Zhao quotes *Murphy, supra*, 164 Cal.App.4th 376 and *Smith v. ExxonMobil Oil Corp.* (2007) 153 Cal.App.4th 1407 (*Smith*) in support of her arguments, but she does not discuss the issues or findings in those cases.  They do not support her position. In *Murphy, supra*, 164 Cal.App.4th 376, a brother filed a lawsuit against his sister challenging an estate plan for their father, William, which had been imposed pursuant to various orders by the probate court.  The brother argued in part that the estate plan resulted from fraud on the part of the sister.  The sister argued that "collateral estoppel barred all of the causes of action because the validity of William's living trust, including the issues of William's capacity, intent and undue influence were

---

[7]With her reply brief, Zhao filed a request that we judicially notice Judge Feffer's courtroom rules.  That request is denied; the document is not relevant to the issues on appeal.  (See *Roth v. Jelley* (2020) 45 Cal.App.5th 655, 678, fn. 10.)

actually litigated and finally decided on the merits in the [probate] proceeding." (*Murphy, supra*, 164 Cal.App.4th at p. 393.) The trial court rejected the sister's contentions and found in favor of the brother.

The Court of Appeal reversed. In discussing the "actually litigated" requirement, the court noted that issue preclusion may bar arguments that *could have been* asserted in an earlier proceeding, but were not. The court stated, "'If the matter was within the scope of the [previous] action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable.'" (*Murphy, supra*, 164 Cal.App.4th at p. 401, quoting *Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 182.) The *Murphy* court also added that a prior judgment "'is a collateral estoppel on issues which were raised, even though some factual matters or legal arguments which could have been presented were not.'" (*Murphy, supra*, 164 Cal.App.4th at p. 401, quoting 7 Witkin, Cal. Procedure (4th ed. 1997), Judgment, § 359, pp. 923-924.)

The *Murphy* court found that in approving William's estate plan, the probate court impliedly found the plan did not result from the sister's fraud or undue influence. (*Murphy, supra*, 164 Cal.App.4th at p. 403.) The court added, "[E]ven if we could not conclude that fraud and undue influence were actually adjudicated in the prior proceeding, we would find them barred in

19

this proceeding. These arguments could have been raised before Judge McMath [in the probate court] to persuade her on at least two different issues she necessarily resolved: that the proposed disposition plan was in the best interest of William and his estate and that the plan was objectively reasonable. Therefore, [the brother] was estopped from raising these contentions here." (*Id*. at pp. 403-404.)

Zhao also cites *Smith, supra,* 153 Cal.App.4th 1407, a wrongful death case. In an underlying personal injury action, a pipefitter, Smith, alleged that he had been exposed to asbestos at various job sites, including an oil refinery owned by the defendant, Mobil. After the trial had started, Mobil's expert witness on causation had a serious family emergency and could not testify. Mobil could not immediately replace the witness. "Because the presentation of evidence was by then nearly completed, and Smith was seriously ill and apparently near death, so that trial could not be significantly delayed beyond the few days that had been allowed by the court, Mobil decided it had no alternative but to proceed without the testimony expected of [the expert]." (*Id*. at p. 1412.) The jury found Mobil liable for negligence. (*Ibid*.) Mobil appealed, and the Court of Appeal affirmed. (*Ibid*.)

After Smith died, his family members sued Mobil for wrongful death. They moved to preclude Mobil from challenging causation and negligence on the basis that those issues had been litigated and adjudicated adversely to Mobil in the personal injury action. (*Smith, supra*, 153 Cal.App.4th at p. 1412.) Mobil opposed the motion, asserting that it would be unfair to apply collateral estoppel because the expert's "sudden inability to testify at the personal injury trial, for which Mobil was not

responsible, prevented it from mounting a complete defense to the liability claim." (*Ibid*.) The trial court rejected Mobil's contentions, and a jury found in favor of Smith's family.

The Court of Appeal reversed. It discussed the offensive use of issue preclusion: issue preclusion used by a plaintiff against a defendant. (*Smith, supra*, 153 Cal.App.4th at p. 1414.) The court acknowledged that "collateral estoppel does not apply 'when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate the claim or issue.' [Citation.] The problem is that parties against whom a verdict is returned commonly feel they were denied a 'full and fair opportunity' to litigate their claims and, because no trial is perfect, it is usually not difficult for them to find a defect upon which to try to hang their hats." (*Id*. at p. 1416.) The court emphasized that in the underlying action, neither Mobil nor its counsel was responsible for the expert witness's unavailability. (*Id*. at p. 1420.) The court continued, "It is additionally clear that those issues—causation, the applicable standard of care at the time, and apportionment of fault—were all crucial issues. Mobil's fortuitous inability, through no fault of its own, to produce evidence on these crucial issues makes it impossible to say that the prior trial provided it a full and fair opportunity to present a defense. In the unusual and compelling circumstances of this case, the trial court's application of collateral estoppel was unfair and must be set aside." (*Ibid*.)

The reasoning in *Smith* does not compel a similar conclusion here. There were no unusual or compelling circumstances in the interpleader action caused by factors beyond Zhao's control. To the contrary, Judge Feffer's limitation on Zhao's evidence resulted from Zhao's and her counsel's failure to

21

comply with court rules regarding the timing of filing pretrial documents. The situation here is one that the *Smith* court cautioned against: a litigant unsatisfied with a prior decision who claims she was denied a fair trial and "find[s] a defect upon which to try to hang [her] hat[ ]." (*Smith, supra*, 153 Cal.App.4th at p. 1416.) Moreover, as stated in *Murphy*, issue preclusion applies to issues that were raised or could have been raised in the earlier proceeding, which includes all of the contentions Zhao makes here. In short, we find no support for Zhao's assertion that the relevant issue was not "actually litigated" in the interpleader action.

## C.    Fraud

Zhao asserts that the "trial court should not have given preclusive effect to the interpleader judgment obtained by Kuo's fraudulent means." She argues that Kuo "falsely and evasively testified in the Interpleader Action in favor of J. Tan," and his testimony contradicted various Global Valley documents regarding whether Yue/East Asia or Zhao invested in Global Valley. Zhao contends that "Judge Feffer specifically relied on Kuo's misrepresentations, evasiveness and false testimony" in reaching her decision. She argues that issue preclusion "is an equitable concept," and therefore Kuo, who is "seeking to capitalize on his fraudulent testimony," should not be permitted to use issue preclusion against Zhao.

As discussed above, Zhao had a full and fair opportunity to assert her contentions in the interpleader action, including addressing Kuo's contentions about the history and ownership of Global Valley. A transcript from the interpleader action filed with Zhao's opposition makes clear that Zhao cross-examined Kuo about issues such as Global Valley's investors and the

22

documents demonstrating membership in Global Valley, including documents showing that Zhao was part owner. The interpleader court stated in its decision that it considered the testimony presented and made credibility findings. Zhao chose not to pursue an appeal of the court's judgment. She may not now collaterally attack the interpleader judgment on the basis that she disagrees with the court's credibility determinations. Thus, Zhao's contention that "Kuo gave evasive testimony, lied and/or made a number of misrepresentations in the Interpleader Action" is not a basis for limiting the application of issue preclusion here.

Zhao also asserts that it was "no coincidence that Kuo falsely testified in favor of J. Tan in the Interpleader Action," suggesting some sort of undefined collusion between Kuo and Tan. She asserts that the settlement agreement from the interpleader action "established that W. Zhao (and not J. Tan) had all the legal rights and/or had acquired them to proceed in [this action] against Kuo and Global Valley." Zhao argues that the trial court erred because it did not "fully and adequately consider the fact that W. Zhao had the legal rights to proceed (regardless of the Interpleader Judgment) against Kuo and Global Valley." She also asserts that these were "new facts or changed circumstances from the Interpleader Action directly affecting whether the doctrine of collateral estoppel should have been applied."

However, Zhao's claims in the FAC are based on her purported investment in and ownership of Global Valley—not on rights assigned to her by Tan. Moreover, she does not explain how these newly assigned rights differed from her own, or on what basis they might warrant a different result. Thus, Zhao has

not established any error regarding the court's consideration of the settlement agreement.

Because the identical issue was actually litigated in the interpleader action, and Zhao's claims of fraud are not supported by the record, issue preclusion bars Zhao's claims that she had an ownership interest in Global Valley. Summary judgment was therefore warranted.[8]

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, J.

We concur:

WILLHITE, ACTING P.J.

CURREY, J.

---

[8]With her opposition to the motion for summary judgment, Zhao objected to a portion of Kuo's declaration stating that "One of the investors in Global Valley was East Asia Investment Group, Inc., which was owned and operated by Yue 'Gary' Zhao." The trial court overruled the objection, and Zhao asserts on appeal that the court abused its discretion in doing so. Because the facts stated in the declaration are not relevant to the application of issue preclusion, and issue preclusion is dispositive, we do not reach Zhao's contentions regarding the court's evidentiary ruling.

24