Filed 3/24/22  Sutherland v. Arent CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CANDYCE K. SUTHERLAND, as TRUSTEE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRIEN J. ARENT et al.,<br><br>    Defendants and Appellants. | A160404<br><br>(Lake County<br>Super. Ct. Nos. PR 502326 &<br>CV418910) |

Soon after the owner of properties held in trust died, his children began litigating disputes related to the disposition of trust assets.  In an earlier unlawful detainer proceeding brought against appellants (one of the owner's sons and his partner), they presented a lease that they purportedly entered into with the father before he died.  The trial court in that proceeding ruled in their favor.

This action was brought by respondent trustee (one of the owner's daughters) to resolve several trust issues, and appellants maintained that the validity of the lease could not be challenged under principles of collateral estoppel.  The trial court disagreed, later found the lease to be a forgery, and ruled in respondent's favor.  The court also allowed respondent to charge her brother's share of the trust for the legal costs incurred in litigating the validity of the lease.

1

We affirm. Appellants have failed to establish the elements of collateral estoppel, and the doctrine's application here would in any event be unjust.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

This dispute centers on property in Lakeport held in a trust created by Samuel James Arent and Lorna Mae Arent. Samuel and Lorna had four children: respondent Candyce Sutherland, Rebecca Draper, appellant Brien Arent, and Dan Arnet (previously Arent).[1] In June 1989, Samuel and Lorna purchased and moved to a 76-acre property on Scotts Valley Road ("the Ranch") that includes a ranch house on one side of the road and a cabin on the other. They later bought two additional nearby properties: a hayfield with no structures, and a 15-acre parcel across the road from the Ranch that includes a house.

Samuel and Lorna bought the second property with a house because appellants—Brien and his longtime partner, Eva Keiser—were expecting their third child and were "in dire need of a place to live." Appellants moved into the home after it was purchased in late 1992. According to testimony at trial, Brien has a history of drug use, has grown marijuana, has been in jail multiple times, and has a felony conviction for fraud related to welfare benefits.

In late 1995, Samuel and Lorna placed all three properties into the Samuel J. Arent and Lorna M. Arent 1995 Trust ("the Trust") and selected their daughter Sutherland as successor trustee. All four of their children are beneficiaries of the Trust. Lorna died in January 2016. After Lorna's death,

---

[1] We refer to those who share the last name Arent by their first names. We refer to all others by their last names.

2

Brien and Keiser lived in the main home on the Ranch to provide care for Samuel, though Keiser went between the two houses.

Sutherland found communicating with her father after this time to be "problematic." She had trouble getting through to Samuel on his landline, and she was unable to reach him directly on a cell phone she had given him a few years earlier. Instead, Brien would answer the cell phone.

According to appellants, they and Samuel in April 2016 entered into an "OPERATING BUSINESS AND FARMLEASE [*sic*] AGREEMENT" (the "Lease Agreement"), for a term of five years with an option to renew it up to 20 years. The document stated that Samuel was the landlord and appellants were tenants, that Samuel leased to appellants the Ranch for agricultural purposes, that the terms of the lease would be binding on all heirs and administrators, and that appellants could terminate the agreement at any time. Keiser and Brien both signed the Lease Agreement. Two purported signatures of Samuel's appear on the agreement. One is "S J Arent" and the other is "Samuel J Arent by Brien J. Arent his agent." According to Keiser, the Lease Agreement was meant to allow appellants to "continue the hay operation" on the property.

Appellants also claimed that Samuel entered into another document entitled "addendum and directive of Samuel J. Arent" (the Addendum). Keiser testified that she prepared the document after Samuel had a doctor's appointment in January 2017 and was told to get his affairs in order before a cardiac procedure at the end of February. According to Keiser, Samuel "had the intent of keeping the ranch there and having it available for his grandchildren," and wanted the hay business that Brien was running on the property to continue. The Addendum stated that Brien and Sutherland were to act as co-trustees. Keiser signed the Addendum, but Samuel did not.

Samuel died on February 3, 2017. Later than month, Sutherland traveled from her home in Washington state to the Ranch. Brien gave her a manila envelope with what he said were her copies of trust documents. Though the issue was disputed at trial, Sutherland testified the packet did not include the Lease Agreement. Brien told Sutherland that their father "had basically a deathbed change of what he wanted to do," and that Brien was now the "lead trustee." He also told Sutherland that he intended to run a cattle ranch on the property and expected to be paid an annual salary of $60,000. Included in the envelope Brien gave Sutherland was the Addendum. Sutherland found the Addendum to be "very alarming" because it "basically undid the entire trust" and gave Brien "full control."

Sutherland learned that Brien had not given her the complete copy of the Trust and that "[m]ajor sections" of it were missing. She obtained a complete copy from a bank where her father had done business, and she also hired an attorney. Years of litigation followed. Sutherland initiated these proceedings, and the trial court confirmed her as trustee in June 2017 following a hearing. She then tried to gain access to the house on the Ranch and the home on the property where appellants lived in connection with obtaining insurance, but appellants refused her access.

After she was refused access to the property, Sutherland initiated unlawful detainer proceedings against appellants and tenants of the cabin. Keiser responded first to the complaint because counsel had trouble serving Brien. She filed a demurrer that included a long factual summary dating back to 1993, but the pleading did not mention the Lease Agreement. Later, Brien filed a motion to quash service of summons that included a lengthy recitation of the facts, but it likewise did not mention the Lease Agreement. Neither Keiser's nor Brien's eventual answers mention the Lease Agreement,

4

though they did allege that there was an agreement to run a cattle and hay business on the property for around 20 years.

A brief trial was held in August 2018 on the unlawful detainer action. The first time Sutherland or Sutherland's counsel saw the Lease Agreement was when appellants offered it as evidence at trial.[2] Sutherland questioned whether the signature on the document belonged to her father. The trial court compared the signature to one of Samuel's signatures on a bank document and stated, "I'm not a handwriting expert obviously, but it looks to me like it was signed by the same person." The court found by a preponderance of the evidence that appellants entered into a lease agreement and denied Sutherland relief based on the agreement. A minute order was entered stating, "The Court rules in favor of the defendants." Appellants characterize the minute order as a "judgment," but later events call that characterization into question. In any event, no final judgment appears in the record of this appeal.

Parties filed petitions for instructions under Probate Code section 17200, one of which is at issue in this appeal.[3] Sutherland in November 2018 filed a combined complaint/petition that among other things sought cancellation of the Lease Agreement and ejection of appellants from the Ranch. The pleading alleged that the Lease Agreement was invalid because appellants obtained Samuel's signature on it through undue

---

[2] By order filed on March 2, 2022, this court took judicial notice of the reporter's transcript of the trial in the unlawful detainer action.

[3] Draper filed a petition in these proceedings seeking removal of Sutherland as trustee, which was denied, and Draper did not appeal from the trial court's final ruling. Appellants also sought to remove Sutherland as trustee, but they do not directly challenge the trial court's decision not to do so. Brien filed various other petitions and requests but again does not directly challenge the trial court's judgment regarding those pleadings.

5

influence, duress, fraud, and/or mistake. Sutherland sought instructions that, among other things, the Lease Agreement was not a valid instrument, that she had acted properly in seeking possession of the Ranch, and that she had the authority to sell the Ranch. Sutherland also asked that Brien's share be charged for all costs incurred by her and the Trust.

Appellants filed a demurrer to the complaint. They argued among other things that the Lease Agreement had been found to be "valid" in the unlawful detainer action and that Sutherland was thus collaterally estopped from cancelling the agreement. Sutherland opposed the demurrer and argued that the validity of the Lease Agreement had not been finally determined in the previous action. The trial court concluded that Sutherland had not had a full and fair opportunity to litigate the validity of the Lease Agreement in the unlawful detainer proceedings and thus overruled the demurrer.

Trial began in October 2019. An expert in forensic document examination opined that Samuel's signature on the Lease Agreement was forged. Appellants, who through trial and into this appeal have not been represented by counsel, did not offer their own expert testimony.

Following trial and post-trial briefing, the trial court found that the Lease Agreement was a forgery and could not be relied upon in this litigation. The court also found that there was no legitimate document indicating that Samuel granted Brien power of attorney. The court thus granted Sutherland's petition insofar as it sought a ruling that the Lease Agreement was invalid and voidable, and it found that appellants misappropriated property belonging to the Trust.

The trial court then turned to the parties' respective responsibilities for litigation fees, and determined that appellants should pay for those that were

6

incurred after they started to rely on the Lease Agreement.  The court acknowledged that the parties disputed when Brien first gave the agreement to Sutherland and it did not "exactly know which date to believe."  But given that Brien was "emphatic[]" he gave it to Sutherland on February 23, 2017, the court used that date for purposes of starting the period for which appellants were liable for litigation fees and costs incurred by Sutherland on behalf of the Trust.  The court concluded that the amount of these fees and costs would be charged to Brien's share of the Trust proceeds.  The court granted Sutherland the discretion to sell the Ranch as well as the property where appellants lived in order to pay Trust expenses prior to any distribution to the beneficiaries.  The court's minute order further states, "The Court grants the Unlawful Detainer as to the Ranch Property.  The Unlawful detainer was previously stayed due to the lease agreement, that the Court has now found fraudulent."  The court's judgment granted possession of the Ranch in favor of Sutherland as against any current tenants of the property.

## II.
### DISCUSSION

### A. *Principles of Collateral Estoppel Did Not Preclude the Trial Court from Considering the Validity of the Lease Agreement.*

Appellants do not challenge the evidence supporting the trial court's conclusion that the Lease Agreement was forged.  Instead, they renew their argument that Sutherland was collaterally estopped from challenging the validity of the agreement because its validity was litigated in the unlawful detainer proceeding.  We are not persuaded.  Appellants have failed to establish that all the elements for the application of collateral estoppel were met.  And even if they had established that those elements were met, the

7

trial court properly rejected the application of collateral estoppel because its application would be unjust under the circumstances of this case.

                1.      Appellants have failed to establish that all the elements for the application of collateral estoppel were met.

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*).) Its requirements are well settled. "First, the issue sought to be precluded from litigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.] The party asserting collateral estoppel bears the burden of establishing these requirements." (*Ibid.*)

Appellants have failed to establish all these elements. To begin with, they have failed to satisfy their burden of showing that the minute order in the unlawful detainer action was a final determination. One of Sutherland's attorneys testified at trial about the fees expended on this case. On cross-examination, Keiser asked the attorney whether a judgment had been entered in the unlawful detainer action, and the lawyer testified that "there is a thing called a judgment that the court can enter, and it's never been entered in that case." When the trial court announced its ruling in these proceedings it said that "there was a lot of discussion here whether the unlawful detainer was still in play. *By my estimation, it is still in play*. And so I would grant the unlawful detainer as to the ranch property. . . . [T]he unlawful detainer was, in a sense, stayed because of the presentation of the

8

lease that this Court has now deemed fraudulent. So my review of the paperwork is that that was where it stood, and so I would grant the unlawful detainer." (Italics added.)

Instead of directly challenging that conclusion by the trial court, appellants rely on a former rule of court regarding the entry of a minute order for purposes of filing an appeal. The current rule provides that "[t]he entry date of an *appealable order* that is entered in the minutes is the date it is entered in the permanent minutes." (Cal. Rules of Court, rule 8.104(c)(2), italics added.) But an order in an unlawful detainer action is not an appealable order under Code of Civil Procedure section 904.1, and appellants do not direct us to any judgment entered in the action. Instead, they point to the reporter's transcript of the trial where the trial court found that appellants entered into an agreement with Samuel and thus ruled in appellants' favor. But the court also stated that Sutherland "could certainly come back and file a complaint alleging [a breach of the Lease Agreement]. But I can't rule on that issue if it's not contained in the complaint," an apparent suggestion that Sutherland amend her unlawful detainer complaint, as opposed to filing a new one following the entry of judgment.

In addition to failing to show that the minute order in the unlawful detainer proceeding was a final determination, appellants have failed to show that the validity of the Lease Agreement was fully and fairly litigated in that proceeding. We acknowledge that there are situations where parties may be collaterally estopped from raising issues previously litigated in an unlawful detainer action. For example, in *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, a tenant argued that he was actually the owner of the property because, although he had signed a form lease with an option to purchase, the agreement was actually an installment sale contract. (*Id.* at p. 1322.)

9

Following an evidentiary hearing, the trial court concluded that the tenant had knowingly entered into the lease and that there was a landlord-tenant relationship. (*Id.* at pp. 1323–1324.) In a separate action the tenant brought alleging fraud and breach of an oral contract, the trial court concluded that the tenant was collaterally estopped from relitigating the validity and enforceability of the parties' written lease agreement, and Division Four of this court affirmed. (*Id.* at pp. 1323–1325, 1333.)

*Ayala* and other cases addressing the preclusive effect of unlawful detainer actions focus on factors such as the length of the previous proceedings, the scope of discovery, the quality of the evidence, and the general character of the action. (*Ayala v. Dawson*, *supra*, 13 Cal.App.5th at pp. 1328–1330; see also *Vella v. Hudgins* (1977) 20 Cal.3d 251, 257 [collateral estoppel did not apply where party did not have benefit of "fair adversary hearing" in unlawful detainer action]; *Mehr v. Superior Court* (1983) 139 Cal.App.3d 1044, 1050 [collateral estoppel did not apply where issue of fraudulent acquisition of title not fully litigated in unlawful detainer action, as stated on record by trial court]; *Wood v. Herson* (1974) 39 Cal.App.3d 737, 742 [collateral estoppel applied where prior action "was not the customary unlawful detainer proceeding" because extensive depositions were taken by all parties before trial and trial lasted several days].)

But applying collateral estoppel principles in proceedings in which the focus is how an agreement should be interpreted is far different from applying them in a case, such as this one, in which the claim in the subsequent proceeding is whether the agreement was forged. Although the Lease Agreement's validity was touched upon in the unlawful detainer action, we cannot conclude that appellants have shown that it was fully and fairly litigated.

2.     The application of collateral estoppel would be unjust.

Even if appellants had established the elements for the application of collateral estoppel, we would affirm the trial court because we agree with Southerland's contention that applying it in this case would be unjust. When the prerequisites for applying collateral estoppel are met, the decision whether a prior ruling should be given preclusive effect is still entrusted to the trial court's discretion, and turns on whether doing so "would be fair to the parties and constitutes sound judicial policy" in light of the "public policies underlying collateral estoppel—[namely,] preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." (*Lucido, supra,* 51 Cal.3d at p. 341.)

Applying the doctrine here would be akin to precluding a perjury prosecution because perjured testimony was relied on in a previous proceeding. " ' "Justice cannot be administered through a system of courts unless there can be some assurance that the finding of the court is based upon testimony truthfully given. Any rule which tends to encourage the giving of false testimony threatens the peaceable and commendable settlement of controversies by the courts." ' " (*People v. Barnes* (1966) 240 Cal.App.2d 428, 432.) " 'It would be a monstrous doctrine to hold that a person could go into a court of justice and by perjured testimony secure an acquittal, and because acquitted [the defendant] could not be tried for his [or her] perjury, this would be putting a premium upon perjury and allowing a scoundrel to take advantage of his [or her] own wrong. Public policy does not guaranty immunity to criminals, and that is just what we are asked to do in extending the doctrine of res judicata to perjury.' " (*Id.* at pp. 432–433 [defendant convicted of perjury after giving false testimony in his burglary

11

trial].)  To apply collateral estoppel would immunize a defendant from the crime of perjury "and reward [a] falsehood." (*Id.* at p. 433; see also *People v. Garcia* (2006) 39 Cal.4th 1070, 1091 [if defendant makes false statements in administrative proceedings, collateral estoppel does not necessarily preclude perjury charge if false representation was material to the proceedings].)

The cases upon which appellants rely are all distinguishable because none of them involved cases where parties were accused of presenting false information or documents in the previous proceeding.  For example, in *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, a conservator obtained an order from a probate court to enter a substituted judgment (Prob. Code, § 2580, subd. (b)(5) & (13)) authorizing the conservator to establish a living trust and pour-over will that effectively disinherited one of the conservatee's two children after the disinherited child was given notice, no objection was filed, and a hearing was held. (*Murphy* at pp. 383, 390–392.)  After the conservatee died, the disinherited child filed a civil action for wrongful disinheritance. (*Id.* at pp. 392–393.)  His sibling argued that collateral estoppel barred the complaint because the validity of the conservatee's living trust and issues of his capacity, intent, and undue influence had previously been litigated, and the appellate court agreed. (*Id.* at pp. 383, 393.)  At no point in the proceedings did the disinherited child claim that the conservator had forged a signature or presented a fraudulent document to the probate court.  Instead, the issue presented was whether the doctrine of collateral estoppel applied to a substituted judgment order, i.e., whether the issues presented had been actually litigated and necessarily decided in the previous proceeding. (*Id.* at pp. 398, 400.)  Appellants here ask the court to focus on these factors without consideration of the allegations of forgery.  In fact, they do not challenge the trial court's factual finding in these proceedings that the

12

Lease Agreement was a forgery. The trial court stated when announcing the ruling on the various petitions that because Sutherland's expert "literally wrote the book" on handwriting analysis, "his opinion on [the Lease Agreement] was both appreciated and given great weight by the Court," especially given that no competing expert opinion was offered.

We agree with Sutherland that the equitable principles set forth in *Smith v. ExxonMobil Oil Corp.* (2007) 153 Cal.App.4th 1407 (*Smith*) are instructive. There, a defendant in a personal-injury asbestos lawsuit retained an expert witness who was prepared to testify at trial about the reasonableness of the defendant's practices at the time of the plaintiff's exposure to asbestos. (*Id.* at p. 1411.) After trial began but before the expert testified, his daughter died and he was unable to testify, and the defendant was unable to secure another expert on such short notice. (*Id.* at pp. 1411–1412.) The case was submitted to a jury without the defendant's expert testimony, and the jury attributed 12.5 percent of the plaintiff's injuries to the defendant and awarded damages. (*Id.* at p. 1412.) In a subsequent wrongful-death action brought by the plaintiff's surviving family members, the trial court applied collateral estoppel to bar the defendant from challenging liability given the adverse ruling in the prior proceeding, and trial proceeded as to the issue of damages only. (*Id.* at pp. 1412–1413.)

Division Two of this court reversed. (*Smith, supra,* 153 Cal.App.4th at pp. 1415, 1421.) Unlike respondent here, the defendant in *Smith* conceded that the requirements of collateral estoppel had been met, as there was a final judgment on the merits in the prior action on the identical issue sought to be relitigated against the same party as the prior action. (*Id.* at p. 1414.) The court nonetheless concluded that it would be "unfair" and amount to "bad policy" to apply collateral estoppel. (*Id.* at p. 1415.) "The deprivation of

13

crucial evidence or witnesses at the earlier trial is . . . among the considerations mentioned in the Restatement Second of Judgments as militating against preclusion. Section 29 of the Restatement states the familiar principle that a party is not precluded from relitigating an issue 'unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or *other circumstances* justify affording him [or her] an opportunity to relitigate the issue.' (Rest.2d Judgments (1982) § 29, italics added.) Comment j to section 29 states that '[i]mportant among such other circumstances is the disclosure that the prior determination was *plainly wrong* or that new evidence has become available that could likely lead to a different result. It is unnecessary that the party seeking to avoid preclusion show, as he [or she] must in seeking to set aside a judgment, that the evidence could not have been discovered with due diligence; the question is not whether a prior determination should be set aside but whether it should be treated as conclusive for further purposes.' (Rest.2d Judgments, § 29, com. j, p. 297.)" (*Id.* at p. 1417, italics added.) Because neither the defendant nor its counsel had been responsible for the unavailability of the expert in the first trial, and the expert had been expected to testify about "crucial issues," applying collateral in those "unusual and compelling circumstances" was unfair and thus was set aside. (*Id.* at p. 1420.)

Unusual and compelling circumstances likewise lead us to reject the application of collateral estoppel here. Appellants point to the trial court's ruling in this case that the Lease Agreement was provided to Sutherland in February 2017 and claim this shows she knew of the agreement and was not surprised at the unlawful detainer action. But our focus is not on whether " 'the evidence could . . . have been discovered with due diligence' " but on the fact that further evidence showed that the previous determination regarding

14

the Lease Agreement was " 'clearly wrong.' " (*Smith, supra*, 153 Cal.App.4th at p. 1417.)

We reject appellants' arguments because they have not established all the elements for the application of collateral estoppel and applying the doctrine in this case would be unjust in any event.

*B. The Surcharge on Brien's Share of the Trust Was Not Unreasonable.*

We also reject appellants' brief argument that the trial court should not have charged Brien's share of the Trust with litigation costs and attorney fees incurred on behalf of the Trust. Again, the trial court specifically found that the Lease Agreement was a forgery that Brien perpetrated, that Sutherland acted reasonably in various actions she took as trustee, and specifically that she acted properly by retaining attorneys and incurring litigation costs. When issuing its oral ruling, the trial court stated that "much, if not all, of [the] legal fees were expended because of motions filed by Eva Keiser and Brien Arent. When Brien Arent did not become the co-trustee, as he wanted to be, it appears that they simply filed a lot of motions. Obviously, the court is here and people are completely within their legal rights to file motions, but then turning around and blaming the trustee for responding to those motions through her legal counsel seems somewhat disingenuous." The court further stated that the other beneficiaries "should not bear the brunt of the finances that were required to be expended because of the endless motions brought because Brien Arent wanted to be the co-trustee." The court acknowledged that the legal fees expended were high but found that "it's not the lawyers or Ms. Sutherland who would be responsible for those, it is the—Mr. Arent, specifically Brien Arent, and Eva Keiser who created a situation based on a fraudulent lease where these fees had to be incurred."

Appellants do not address any of these findings on appeal, let alone explain why the findings are in any way inaccurate or unsupported by the record. Instead, they state general and uncontroverted legal principles, such as that a trustee must act subject to his or her fiduciary duties (Prob. Code, § 16202) and that attorney fees undertaken on behalf of a trust must be reasonable in amount as well as reasonable and appropriate for the benefit of the trust (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 263). We presume that the trial court's order is correct and supported by substantial evidence. Absent reasoned argument that the trial court erred, we need not further address appellants' arguments.

## III.
### DISPOSITION

The judgment is affirmed. Sutherland shall recover her costs on appeal.

_____

Humes, P.J.


WE CONCUR:



_____

Banke, J.



_____

East, J. *




*Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*Sutherland v. Arent*  A160404


17